LUCINDA JOHNS, plaintiff in error, vs. GEORGE JOHNS, Sen'r, defendant in error.

[1.] The communications of one person to another are incompetent testimony, being hearsay only.

[2.] Confessions of parties against themselves are admissible in a libel for a divorce, when there is no suspicion of collusion.

[3.] In a suit for divorce, the fact that the plaintiff had a friendly interview with his wife, and requested her to return home and live with him, does not amount in law to a condonation of the libel.

[4.] To a libel for divorce, on the ground of cruelty in the wife, she may recriminate the adultery of the plaintiff, her husband.

Libel for divorce. Tried before *Judge* COCHRAN, at the October Term, 1859, of Charlton Superior Court.

This was a libel for divorce, by George Johns, Sen'r, against Lucinda Johns, his wife, on the ground that said Lucinda had attempted to poison libellant. There was an amendment to the libel, charging respondent with adultery.

Upon the trial, libellant offered in evidence the following testimony:

*George Johns, Junior,* son of libellant, testified: That he saw a man by the name of Wheeler kiss respondent, in the house of libellant; and that respondent had put the strychnine in coffee and biscuit to poison libellant, and that he sat at his father's feet to prevent it; that the strychnine had been put in a box of his, and respondent got it by obtaining the key to said box from him; the strychnine was found hid in a crawfish hole, about 250 yards from the house; that he was induced to go there to hunt it, by Mrs. Wheeler having told him about it.

The statements of Mrs. Wheeler were objected to by respondent, but they were admitted by the Court as inducement to witness's conduct, he testifying that they found it there, and that it was taken from respondent's bosom.

*Cross-Examined.*—The kissing took place in the hall, the parties standing up, touching each other with their lips; libellant was in the piazza at the time. Dyass, from whom he purchased it, told him it was strychnine, and that he put it for *varmints,* and it had killed four; that he did not know that it had killed them, but he found them dead, and supposed the strychnine had killed them; that he did not see the respondent take the strychnine out of his box, nor did he see it taken from the crawfish hole, nor from respondent's bosom; that he did not see any strychnine put in the coffee or biscuit. He asked respondent what possessed her to do it; she said she did not know, unless it was the devil; and that he threw out the coffee, and she picked up the biscuit and carried it off; Mrs. Wheeler told him that poison had been put in the coffee and biscuit. Respondent objected to Mrs. Wheeler's sayings; the Court refused to rule these sayings out, as they had been drawn out on cross-examination by respondent's counsel, and respondent excepted. Libellant here closed.

Respondent introduced the following testimony:

*Allen Dixon* testified: That he saw libellant in bed with a Mrs. Ruis, at 8 o'clock at night and early next morning, in the manner of husband and wife, since the commencement of this suit.

It was also proved by another witness, that libellant had been in bed with Mrs. Ruis, at her house at night, and on two other occasions with a Mrs. Baker, all since the commencement of this suit.

*Jas. M. Alberton* testified: That libellant told him that he had turned respondent out of his house for loose conduct and trying to poison him.    On cross-examination, testified, that respondent was a loose woman.

*Zeyheriah Roberts* testified: That respondent resided at his house in Jacksonville, Florida, as a boarder, upwards of nine months; that her conduct was chaste and virtuous, so far as he knew; that while at his house libellant visited her, treated her kindly, and told witness he wanted her to go home with him; this occurred after the institution of this suit.

The case being closed, respondent's counsel requested the Court to charge the jury—

1st. That what was said by Mrs. Wheeler, about the strychnine and poisoning, was not evidence.

2d. That the confessions of the parties were not evidence.

3d. That if libellant was reconciled to respondent, when he visited her in Jacksonville, it was condonation, and they must find for respondent.

4th. That if the jury believe from the evidence, that libellant had been guilty of adultery since the commencement of this suit, that he was not entitled to a divorce.

The Court refused to charge the two first requests, and charged the two last, with a qualification, and respondent excepted.

The Court charged the jury, that the sayings of Mrs. Wheeler being drawn out by respondent's counsel on cross-exami-

nation, were evidence as inducement.    That the confessions of the parties are admissible in evidence.    That if they believe that respondent attempted to take the life of libellant, it was cruel treatment; and if they find cruel treatment, sufficient to authorize a divorce, then adultery in libellant is no bar to a divorce.    To which charge respondent excepted.

The jury found for libellant, granting a divorce *a vinculo matrimonii*, and allowed respondent no alimony.  The property belonging to libellant, as contained in the schedule filed, amounted to $11,000, and there were no children, and the property came by the husband.

Whereupon, respondent tendered her bill of exceptions, assigning as error the rulings, decisions, charge and refusal to charge above stated and excepted to.

Wm. B. Gaulden, for plaintiff in error.

Long & Roll; W. H. Dasher; and G. B. Williamson, *contra*.

*By the Court.*—Lumpkin J. delivering the opinion.

[1.] The testimony of George Johns, Junior, the son of the plaintiff, is so contradictory and confused, that I scarcely deem it necessary to analyze it minutely.    It would be dangerous in the extreme, to put asunder what God has joined together, upon such proof.

Much of it should have been rejected, especially the information which Mrs. Wheeler gave to him, that strychnine was put in the biscuit and coffee.    And that was all the knowledge he had upon the subject.    The communication led to no discovery whatever.    For the fact was not proven that the articles of food were poisoned.    Nor should he have been allowed to testify that he stood at the feet of his father to protect him from being poisoned.

[2.] We think the Court was right in admitting the confessions by the parties against themselves. There is no pretence that there was any collusion between the parties to procure a divorce.

[3.] We hold, too, the Court committed no error in refusing to charge the jury, that the interview at Jacksonville, Florida, between plaintiff and defendant, as proven by the witness, Roberts, was a condonation of the libel. It was proper and overwhelming testimony, to be urged in argument to the jury, to show that the husband did not apprehend any danger from living with his wife; and thus to rebut the charge of cruelty at her hands. It amounted to this and nothing more.

The libel was founded upon two grounds—adultery and cruelty; but there being no proof to support the first charge, except the saintly kiss, witnessed by young Johns in the parlor, between his step-mother and Mr. Wheeler, the husband perhaps of Mrs. Wheeler, the informant of the naughty doings; of Mrs. Johns, the case went to the jury upon the charge of cruelty alone.

[4.] Can the defendant counter-plead to this, the offence of adultery in the plaintiff? It has been held by the English Courts, that cruelty cannot be pleaded in bar to a suit for adultery; but the converse of this proposition has not been laid down, namely, that when the husband alleges cruelty against the wife, she cannot defend by showing his adultery. And, indeed, it appears that she can. 2 *Atkins*, 96 ; 7 *Eng Ecc. Rep.* 377, 380 ; *add Ecc. Rep.* 411–12 ; *Eng. Ecc. Rep* 158, 171.

In Missouri they have a statute similar to our Act of 1850, *(Cobb*, 226,) upon the subject of divorce. It has a provision too like ours, that where both parties are guilty, no divorce should be decreed. And under this statute, the Courts of that State have held, that the decree must be refused where both parties are guilty of any of the enumerated offences. *Neagle vs. Neagle*, 12 *Miss. 53* ; *Ryan vs. Ryan*, 9 *Ibid*, 539.

And it occurs to us that it is difficult to answer the reasoning which conducts to this conclusion.    For if each offence is the same, it cannot be said that one is more heinous *in law* than another, however it may be in morals.    Each alike authorizes a total disruption of the nuptial tie.    And in law, as in mathematics, things that are equal to the same thing, are equal to one another.    True, our statute does not make it imperative to grant a total divorce in all cases of cruel treatment.    But the discretion operates against the plaintiff in this case.    His adultery demands it, whether the wife's cruelty does or not.

The law contemplates the innocence of the party seeking the divorce.    How can the Courts decide which is the innocent and which the injured party, when both, under the statute, are in *pari dilecto?*    Can either have the contract vacated at the expense of the other, when it has been equally infracted by both?

The true rule, we apprehend, although it is not necessary to go so far in this case, is to allow the defendant to recriminate for any of the causes which would dissolve the contract, whether it be *eodum dilectum* or not.