MARY DOE, RESPONDENT, *v.* RICHARD ROE, APPELLANT.

*Action for a separation on account of cruel treatment—cannot be maintained where the cruel treatment was occasioned by the complainant's adultery—meaning of words "ill conduct" in section 53 of 2 R. S., 147—Joinder of a cause of action for a divorce, with one for a separation.*

Upon the trial of this action, brought by the plaintiff to procure a limited divorce from the defendant on account of his cruel treatment of her, it appeared that for some time previous to December 10, 1877, she had been in the habit of having illicit intercourse with one Platz, having visited him at his market for that purpose, and having sent to him by the hands of her daughter, a girl about eleven years old, notes asking for interviews and expressing her love and her desire to be with him. On December 10, the daughter handed one of these notes to the defendant, and informed him that she had previously carried similar notes to Platz. The cruel acts complained of took place on that and the following day, and on or about the 24th, 27th and 29th of that month, and were caused by the discovery of the plaintiff's adultery. On April 16 the plaintiff went away from the defendant, and has since been living apart from him in another city.

*Held,* that the plaintiff was not entitled to maintain the action nor to have any allowance made to her for her support.

*Terhune* v. *Terhune,* 40 How. Pr., 258, and *Henry* v. *Henry,* 17 Abb. Pr., 411, not followed.

The adultery of the wife is "ill conduct" within the meaning of those terms as used in section 53 of 2 R. S., 147, authorizing the defendant, in an action for a separation, to prove ill conduct on the part of the complainant.

*Quære,* as to whether or not, under the present practice, a cause of action for a divorce, on the ground of adultery, can be united with one for a limited divorce, on the ground of cruel treatment. (Per LEARNED, P. J.)

APPEAL from a judgment granting to the plaintiff a limited divorce on account of the cruel and inhuman treatment of the defendant, her husband, and an allowance of $150 per annum for her maintenance and support, with the costs of the action.

This is an action for separation, on the ground of cruel treatment. It was proved in defense, and it is found by the referee, that previous to the cruel treatment, the plaintiff had committed adultery, and that knowledge of that fact or reason to believe it had come to the defendant; that all the cruel treatment was occasioned by this adultery, and took place after the knowledge thereof, or reason to believe the same, had come to the defendant, and was committed only when the subject of such adultery was under discussion; that previous to the time when the defendant learned of said adultery, or had reason to believe the same had taken place, the plaintiff and defendant lived on happy and amicable terms.

That previous to such treatment, the plaintiff had sent by a daughter of the parties, addressed to the paramour of the plaintiff, several notes, which had been delivered by said daughter to the defendant. These notes are set forth. They are improper, and plainly indicate adulterous relations.

The referee held that these facts constituted no defense; that the adulterous conduct of the plaintiff, although it caused the defendant to commit the violence, was not "ill-conduct" within the meaning of the statute; and he reported that the plaintiff was entitled to a judgment for separation.

The Special Term, confirming the report, adjudged separation, and further allowed the plaintiff alimony and costs.

The defendant appeals, and insists, first, that as the knowledge of the plaintiff's adulterous conduct was the cause of the cruel treat-

ment, it was a defense; and secondly, that such conduct was a bar to the allowance of any alimony.

*N. C. Moak*, for the appellant.

*S. W. Jackson*, for the respondent.

LEARNED, P. J.:

We must bear in mind, at the outset, that the question is not whether a husband may maltreat an adulterous wife, without her having any remedy. The criminal law, with its preventive power of binding over to keep the peace, may be called to her aid against such maltreatment, whatever her own character may be.

The question here is whether an adulterous wife, the knowledge of whose adultery has caused her husband to maltreat her, has a right to a limited divorce.

The question must, in this State, depend principally on the meaning of the statute. It is provided that, in an action of this kind, the defendant may prove in justification the ill conduct of the complainant, and that, on establishing such defense, the bill shall be dismissed. (2 R. S., m. p. 147, § [53].) Now, a moment's consideration will show that this provision does not mean that the defendant may show that the alleged cruel treatment took place in resisting the violence of the plaintiff. Because violence, used in repelling violence and necessary therefor, would not be cruel treatment. But the statute is an adoption of the principle, familiar to the law of this subject, of *compensation* or *recrimination.* It is the principle that, in an action for divorce, the plaintiff shall not have relief, if he has himself violated the marriage contract. (Ayliffe's Paragon, 226; *Paria delicta mutuâ compensatione aboleantur;* Sanchez De Sancto Matrimonii Sacramento, Lib. X., Disp. V., § 2, and Disp. VI.) And it must be understood that the ground of this doctrine is not that the wrong-doing of the plaintiff *justifies* the defendant in his wrong-doing. Very plainly adultery on the part of the plaintiff does not justify adultery on the part of the defendant. And yet the plaintiff's adultery is a bar to relief against that of the defendant. And therefore it can be seen that the reason of the principle, in these cases, is that

the plaintiff, having himself violated. his matrimonial duty· to an: extent which entitles the defendant to a divorce, shall have no· relief for the defendant's wrong-doing. The plaintiff does not come with clean hands. (See remarks in *Lempriere* v. *Lempriere,*. Law Rep., 1 Prob. & Div., 569.)

In *Terhune* v. *Terhune* (40 How. Pr., 258), the plaintiff, in an action for limited divorce, demurred to a part of the answer which set up adultery, and the General Term of the Common Pleas sustained the demurrer. The argument of the court is based on the. idea that to hold otherwise would be to concede that a husband had: a right to treat his wife cruelly, because she had been guilty of' adultery. But the argument is not sound. It cannot be said that· a husband · *has a right* to treat his wife cruelly· because she has: been guilty of *any kind of* ill-conduct. And yet the statute ex- pressly says that ill-conduct is a defense to the action. For the, courts have often held that if the alleged cruelty is the result of: the plaintiff's misconduct, she has no right to a divorce. (*Moulton* v. *Moulton*, 2 Barb. Ch., 309 ; 1 Bishop Mar. & Div., § 764, *et seq.*)

That case is based on a Special Term case in · the same court (*Henry* v. *Henry*, 17 Abb. Pr., 411), where the question came up on a motion for leave to set up adultery as a supplemental answer. The court said it was not a .counter-claim, because it did not arise on the transaction ; that it was not a defense, because not connected with the acts of cruelty alleged. The court· must have overlooked section 53, above cited, which does not limit the ill-conduct to. that which is connected with the acts alleged in the complaint.· The court further said that the kinds of relief were . different, so that they could not be joined. But where adultery is set up as a de- fense only, no affirmative relief is asked. And; the court said that the causes could not be tried in one action. If causes at law and in equity can be united, there seems to be no difficulty of the kind suggested in that case. Equitable defenses may be set up to legal actions.

In *McIntosh* v. *McIntosh* (12 How. Pr., 289), the court, follow- ing the old chancery decision of *Smith* v. *Smith* (4 Paige, 92), held that a cause of action for divorce, on the ground of adultery,

could not be united with one for limited divorce on the ground of cruel treatment. This is not the law of the English courts. (*Hughes v. Hughes*, Law Rep., 1 Prob. & Div., 219.) Whether it should now be the law here we need not decide. The reasons given by the chancellor are not all applicable at this day. And the present case does not depend on that question. We do not think that the cases in this State are conclusive on this point.

The subject under consideration has been examined in other States. In *Shackett v. Shackett* (49 Vt., 195), it was held, on demurrer, that adultery by the wife was a defense to a suit against the husband for a divorce on account of intolerable severity. The court said that if, by abuse of his wife, the husband broke the law he would be amenable to it. But, that whether the adulterous wife could invoke the courts to loose her from the bonds of her contract involved a different question. To the same effect is *Johns v. Johns* (29 Ga., 722), *Conant v. Conant* (10 Cal., 249). In *Nagel v. Nagel* (12 Mo., 54), a suit was brought by the husband against the wife. The wife was found guilty of adultery, the husband of cruelty; and the bill was dismissed. This was affirmed in *Duncan v. Duncan* (12 Mo., 157).

In the English courts, in the case of *Watkyns v. Watkyns* (2 Atkins, 96), the wife brought an action for maintenance out of her fortune by reason of cruel treatment. Chancellor HARDWICKE said the court would give no maintenance to a wife guilty of adultery. In *Best v. Best* (Addam's Ecc., 44), the wife sued for divorce on the ground of cruelty. The husband set up her adultery and prayed divorce. On proofs it was held that her charges were not proved; that she had been guilty of adultery which had been conditionally condoned. Both parties were dismissed. In *Dillon v. Dillon* (3 Curteis, 86), the court said that, in an action by the wife for cruelty, it had never been laid down, so far as the court was aware, that the husband could not plead her adultery in bar. (See also 1 Bishop on Marr. & Div., § 87, and *Hope v. Hope*, 1 Swab. & T., 94.)

The foregoing cases may indicate the views of the courts of other States and of England on this point. Of course, it was held in the English Ecclesiastical Courts that cruelty was not a defense

in an action for divorce on the ground of adultery. (*Chambers* v. *Chambers*, 1 Hagg. Con., 439; *Quia potius omnia mala perpeti uxor tenetur quam peccatum in corpus.* Sanchez, X., v., 10.) And thus, in our statute, adultery is the only fault of the complainant which is a defense to an action for divorce on the ground of adultery. (2 R. S., m. p. 145, § [42].) But, on the contrary, in an action for separation, the language is general that *ill conduct* may be set up as a defense. Nor is there anything in the statute which indicates that this ill conduct must be of the same kind with that which forms the ground of complaint. For instance, the complaint might be based on the abandonment of the wife by the husband, and his neglect to provide for her. Could there be a better defense to such a charge than that the wife was an adulteress? If a husband, knowing of his wife's adultery, had left her on that account, and she had brought an action for a separation under subdivision 3, of section [51], would it not be absurd to say that the only defense which he might set up would be cruelty, or abandonment on her part, and that he could not show that worst of all ill conduct, adultery? Now section [53] allows ill conduct to be set up as a defense in any suit brought under section [51]. And, therefore, whatever acts come within the term ill conduct, in an action under subdivision 3 of section [51], must be admissible in an action brought under the other subdivisions.

It seems almost unnecessary to argue that adultery in a wife is ill conduct. By the Mosaic law the adulteress was punished with death. (Deut., xxii. 22.) By Roman law, at one period, her father, and sometimes her husband, might put her to death. (Dig., 48, 5, 20; Dig., 48, 5, 24; Sanchez, X., viii., 32.) Adultery was a capital offense under Constantine (C., 9, 9, 3001); and among many of the nations which arose, on the fall of the empire. (Laws of Visgoths, III., 4, 4; of Burgundians, 68; of Lombards, 1, 32, 1; of Charlemagne, VI., 36.) It is still a crime in several of the States of our country. And however lightly it may be looked upon in this State, it has not yet been called good conduct. We cannot see, therefore, any reason why, under the language of the statute, and on sound reason, it may not be made a defense in an action like this.

But the present case goes a step further. Not only has the plaintiff been guilty of adultery, but the referee finds, and the proof shows, that nothing but her adultery and the discussions to which it gave rise have caused the cruelty. Thus the adultery has been the immediate cause of whatever the plaintiff has suffered. Until she violated her marriage vow, the parties had lived together happily. Upon her, therefore, rests the blame of their dissensions. In the language of the court : " The remedy is in her own power. She has only to change her conduct. Otherwise the wife would have nothing to do but to misconduct herself, provoke the ill treatment, and then complain." ( *Waring* v. *Waring*, 1 Phil., 132 ; *Poor* v. *Poor*, 8 N. H., 307.)

Of course, where a husband had condoned his wife's adultery he could not make it a defense for subsequent cruelty. Perhaps, too, a case might be presented of such a gross character that the court would interfere for the wife, notwithstanding her ill conduct. (1 Bishop M. & D., § 768 ; *Evans* v. *Evans*, 1 Hagg. Con., 35.) And therefore we ought to examine the present case in that aspect. It appears that the plaintiff, for some time previous to December 10, 1877, had been in the habit of having illicit intercourse with one Platz ; that she had visited him for that purpose at his market ; that she had sent him, by the hands of one of her daughters, a girl of about eleven, notes asking for interviews and expressing her love and her desire to be with him. Finally, on that 10th of December, one of these notes was handed by the daughter to the defendant, with the information that she had previously carried similar notes to Platz. The cruel acts took place on that day and the next and on the 24th, 27th, and 29th of that month, or a few days after that last day, and were caused by the discovery of the plaintiff's adultery. The referee finds none subsequent to that time.

On April 16, 1878, the plaintiff went away from the defendant and she has been living separately from him ever since, and in another city from that of his residence. The daughter testifies that the plaintiff slapped her face and bumped her head, when she told her that she had lost the letter of December 10. The letter is produced ; and the plaintiff denies that she wrote it or that she had sent letters to Platz, except orders for goods, or that she

slapped her daughter for losing it. But the referee believed the testimony of the daughter, and we see no reason to doubt it. Hence we have not only the fact of continued adultery, but we have also acts tending to corrupt the mind of the daughter by making her cognizant of the secret intercourse of the plaintiff with Platz, and the " go-between " of these adulterers.

Undoubtedly the acts of the defendant, on discovering these wrongs, were abusive. We do not say that he should have used any violence. It would have been better if he had not, and had only sought redress by an action for a divorce. But it is to be noticed that from December 29, or a few days thereafter, to April 16, we hear nothing of any acts of violence. And we understand from the testimony of the plaintiff that none occurred. Those which she suffered were the immediate result of the discovery of her adultery while the defendant's sense of the wrong done to him was still keen and fresh.

We cannot doubt from the testimony of the daughter that the plaintiff did write and send the note given in evidence. That the plaintiff should have denied this on the stand throws suspicion upon the rest of the evidence. *Falsus in uno falsus in omnibus.* And it is by her evidence, principally, that the aggravated character of the defendant's acts is shown.

For these reasons we are of opinion—first, that the plaintiff ought not to have had any allowance for support and maintenance ; and secondly, that she ought not, upon the facts shown, to have had a judgment for limited divorce.

Therefore the judgment must be reversed and a new trial granted. The costs of the appeal will remain in the discretion of the court on a final decree.

WESTBROOK, J.:

I fully concur in the foregoing opinion of Brother LEARNED, because, first, the Revised Statutes (vol. 3, p. 158, § 66, 6 ed.), make " the ill conduct of the complainant " a defense to an action of this character. A reference to the provision will show that such " ill conduct of the complainant " is not required to be the cause of the cruelty, in order to be available to the defendant, but such " ill con-

duct" is, in and of itself, a bar to the action. The statute so reads, and any decisions which hold that the defendant must, in order to establish a defense, prove something more than "the ill conduct" of the plaintiff, that it must be such "ill conduct" as would justify the violence of the defendant, have added words to the legal enactment, which cannot be found therein; and, second, the referee has found as a fact that the "ill conduct" of the wife—her adultery—was the cause of her ill treatment by the husband. To that part of the report there has been no exception by the plaintiff, and it must be assumed to be true. Unless we are prepared to hold that "ill conduct" which provokes cruel treatment is no defense, the judgment should be reversed for this reason also.

Present—LEARNED, P. J., WESTBROOK, J.; BOCKES, J., not sitting.

Judgment reversed, and new trial granted; referee discharged; costs to remain in discretion of court on final decree.