CURETON *v.* CURETON.

1. The evidence was not sufficient to authorize the verdict finding a total divorce in favor of the husband.

2. A decree for alimony of a sister State, providing for future monthly payments, which by its own terms is subject to be revoked or modified, as to the amount to be paid thereunder, by the court rendering such decree, is not such a decree as is enforceable in this State under the full faith and credit clause of the constitution of the United States, or upon principles of comity.

3. Upon the trial of a suit for divorce, it is the duty of the court, and not that of the jury, to award the custody of the minor children of the marriage.

4. While a trial judge may, within the restrictions prescribed by the Civil Code, § 5331, direct a verdict, this court will in no case reverse a refusal to do so.

Submitted February 3,—Decided June 19, 1909.

Divorce. Before Judge Fite. Dade superior court. May 4, 1908.

*Williams & Lancaster* and *Payne & Payne,* for plaintiff in error.
*W. U. Jacoway* and *R. J. & J. McCamy,* contra.

HOLDEN, J. The defendant in error brought suit against the plaintiff in error, for a divorce on the ground of cruel treatment. The jury found a verdict in his favor, granting him a total divorce. To the order of the court overruling the motion of the wife for a new trial she excepted. The evidence of the plaintiff was substantially as follows: He and the defendant were married in Chattanooga, Tenn., in June, 1900. His wife agreed that if he would consent to be married by the priest, he could raise any children born of the marriage as he saw fit in the Protestant faith and she would raise no objection thereto. The priest informed him that he could not perform the ceremony unless an agreement was made to raise such children to be Catholics, that the agreement was just a matter of form, but that he could not perform the ceremony unless such agreement was made. He made such agreement in writing, though he did not tell his wife of having made it. He and she had some disagreement about the first child being christened by a priest, but he finally agreed to permit it, with the understanding that the children should also be baptized into the Protestant church. He was a clerk in his father's saloon in Chattanooga, and moved his wife into a room above it. She finally became dissatisfied with living over the saloon, and wanted to move to her mother's home. He did not want to go and live with her mother, but wanted her to live above the saloon. She would not go to any entertainments or similar places with him; she did not wish to go. She insisted on his quitting the saloon business ever since they were married, and he finally decided to quit it and go to Rising Fawn, Ga., but she did not want to go to Rising Fawn. They moved to Rising Fawn and resided with his father for awhile, and then went to housekeeping. Finally she said she was going back to Chattanooga to stay, and went back and stayed several weeks. He gave her no cause to leave. He told his father that she had gone back to stay and he thought he would let her stay until she got ready to come back. He never went after her, but his father went and insisted on her coming back, and she returned. She was dissatisfied with staying at Rising Fawn all the time. The

second baby was christened without his knowledge. When he.
asked her about it afterwards, she told him it was none of his busi-
ness. She refused to let him baptize the child into the Methodist
church. She would never go anywhere with him after she moved,
back to Rising Fawn. He was nominated for the legislature. She:
would not help him entertain his friends. One of his friends took:
dinner with him one day, and his wife placed the dinner on the
table and then went into the other room and stayed there with the.
children until he and his friend finished the meal. When he was
at work at the mill, she would not get him any breakfast half the,
time, nor would she send it to him. He had some souvenir badges,
and buttons collected at conventions of lodges to which he belonged.
He stuck them in the paper on the walls with pins. A few days
thereafter he noticed they were gone; and on inquiring of her-
about the matter, she said she had taken them down. He stuck.
them up again, and she took them down again in a few days. She.
said she was the housekeeper and she was going to keep them off'
there; whereupon he slapped her face. Her brother was to be,
married somewhere in Ohio, and she wanted to go to the wedding.
Her brother procured passes for the plaintiff and her to go. He.
told her that he would not go, and she said that she could not go
unless he went. She complained about his refusal to go, and
blamed him for her not being able to go. He got tired of listening
to her wrangling about it, and went into another room and went,
to bed. She came in there, still wrangling about it; whereupon
he returned to the other room and went to bed again. The plain-.
tiff's testimony in regard to what then happened is as follows:
"She came in there then in a rage and pulled the cover off the bed,
grabbed hold of me, going to pull me out of bed, and I slapped
her face that time." A few days after he was elected to the legis-.
lature he went to Athens to attend a law school. When he left he:
told his wife good-bye, but did not tell her where he was going.
She refused to let him take the children to Sunday-school and
never dressed them to go to Sunday-school or church. After he:
left for Athens, she left for her home in Chattanooga; and a few
weeks thereafter she filed a suit against him in the courts of Ten-.
nessee for alimony. After that they had some talk about a recon-
ciliation; but none could be agreed on, for the reason that she.

would not consent to the children being raised in a Protestant church, and would not live in Rising Fawn, Ga.

The wife testified on the trial of the case, denying many of the complaints made by her husband, explaining others, and detailing his conduct towards her; but it is unnecessary to set forth any of the testimony other than that of the husband. The most important parts of his testimony relating to his wife's conduct are hereinabove set forth. The parties were married in June, 1900, and the final separation occurred in October, 1904.

1. The evidence in this case is not sufficient to entitle the plaintiff to a divorce on the ground of cruel treatment. It fails to show on the part of the wife any cruel treatment within the meaning of the law as set forth in the cases of *Ring* v. *Ring*, 118 *Ga.* 183 (44 S. E. 861, 62 L. R. A. 878), *Smith* v. *Smith*, 119 *Ga.* 239, 240 (46 S. E. 106), and *Brown* v. *Brown*, 129 *Ga.* 246 (58 S. E. 825). In the decisions cited supra, it was held: "Cruel treatment as a ground of divorce is the wilful infliction of pain, bodily or mental, upon the complaining party, such as reasonably justifies an apprehension of danger to life, limb, or health . . . The intention to wound is a necessary element of the cruel treatment for which a divorce is allowed." This definition of cruel treatment as a ground of divorce was announced by the majority of this court in the *Ring* case, and by a full bench in the *Brown* case. The evidence in this case fails to show any infliction of pain, bodily or mental, upon the husband by the wife, such as reasonably to justify in him an apprehension of danger to his life, limb, or health. It is with reluctance we set aside a finding by a jury, approved by the court; but after a careful study of all of the evidence in the case, we fail to find any evidence authorizing this verdict, and we are constrained to set it aside. The differences between the husband and wife, their failure to agree in regard to the religious faith in which their children should be reared, the dissatisfaction of the wife about living at the place of residence selected by the husband, and other conduct of the wife appearing in the record, are insufficient to show cruel treatment as defined in the decisions above cited.

2. The plaintiff in error, in her answer to the suit for a divorce, set forth a decree of the chancery court of Tennessee, and the proceedings in which it was rendered, and prayed that the findings

in that decree be made the findings of the jury and the decree of the court in the present suit. · After the husband went to the university to attend the law school and the wife returned to Chattanooga, she filed suit against him in the chancery court of Hamilton county, Tennessee, for alimony in behalf of herself and two minor children. He acknowledged service of the petition in the case, and filed an answer thereto. The case was tried in the Tennessee courts, and the husband carried the case to the Supreme Court of Tennessee. The decree provided for $880, "the same being the sum of $40 per month from the date of the filing of the original bill up to September 1st, 1906, less the sum of $101.96 heretofore recovered in this case and paid into the hands of the clerk.". This sum was paid by the surety on the bond given by the husband in the proceedings referred to. The decree provided for future alimony in monthly payments of $40 each, and awarded the custody of the children to the mother. The decision of the Supreme Court of Tennessee, after announcing several other principles of law, says: "It has also been held that a decree for separate maintenance may, upon due notice, be amended or modified, as justice and equity may require it. . . We shall now proceed to apply the foregoing principles as far as may be necessary for a true solution to the case before the court. The court then proceeds to state the nature of the decree, and to direct its modification, as follows: "The chancellor decreed that the complainant was entitled to $40 per month, as a suitable support for herself and the two children, and rendered judgment for the amount which had accrued at this rate from the filing of the bill to the date of the decree, $640, and further decreed that the defendant should pay into court the further sum of $40 per month on the 1st day of each month after the decree, beginning with the 1st day of May, 1906. The defendant was also taxed with the costs. The cause was likewise retained in court for the enforcement of the decree when necessary, with leave to either party to apply. . . This decree is correct in the main, but we think it should be modified in two or three particulars, as follows: The future monthly payments, beginning with that due the 1st day of August, 1906, should continue within the discretion of the chancellor only until a reconciliation shall have been effected between the husband and wife, and until the husband shall have returned to the discharge of his

marital duties, of which return the chancellor shall be fully satisfied before discontinuing the payments. In the absence of such return to duty on the part of the husband, the payments should continue. There should also be a further reservation with respect to the custody of the children. The injunction was improperly rendered a perpetual one. It should be held within the control of the chancellor, to the end that he may hereafter make such orders as may be most conducive to the interests of the children. The clause permitting the husband to take the children out of the State on executing bond was an improper one. The children should not be taken from the State at all, but should be kept within the jurisdiction of the court." See Cureton *v.* Cureton, 117 Tenn. 103 (96 S. W. 608, 610). The decree in the chancery court of Tennessee was modified in accordance with the directions above quoted. Upon the trial of the divorce case the court directed the jury to find in favor of the wife $720 as the amount which had then become due at the rate of $40 per month, but refused to charge the jury that they could find a verdict for the plaintiff for future monthly payments of $40 each, provided for in the decree rendered in the Tennessee court.

One assignment of error in the amendment to the motion for a new trial is as follows: "Because the court erred in charging the jury as follows: 'I direct you to find a verdict against the plaintiff for the sum of $720, it being the amount due on the judgment in Tennessee, up to this date; but I hold that the plaintiff is not bound by so much of the judgment that provides for future payments of $40 per month.' The error in the above charge being that the plaintiff was liable for the sum of $720 which had accrued to the date of trial, together with $40 per month in the future, as provided in said decree of the proceedings in the chancery court of Tennessee, Hamilton county." The plaintiff in error complains of the refusal of the court to charge the jury that they should find a verdict in her favor for future payments of $40 per month, and also complains that the verdict failing to so find was contrary to law and evidence. The decree of the chancery court of Tennessee in its final shape, after being modified as directed in the decision of the Supreme Court of Tennessee, left the payments of alimony of $40 per month in the discretion of the chancellor. Under this decree the chancellor had a right to stop or reduce

future monthly payments at any time; and the question involved here is whether or not the Tennessee judgment is of such a character as is contemplated in the "full faith and credit" clause of the constitution of the United States. Until there was a resumption of the marital relation, the chancellor could modify the decree as far as concerns the amount of $40 per month to be paid thereunder. Article 4, section 1, of the constitution of the United States declares that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State," and that "the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof." It has been provided by an act of Congress that such records and proceedings "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State in which they are taken." Rev. St. U. S. § 905 (U. S. Comp. St. 677). It is no doubt true that a decree for alimony in one State for a specified sum payable presently in a debt of record, with extraterritorial value and force, entitled to full faith and credit in other States under the provisions of the constitution above quoted, and such decree can be sued on in the courts of other States and judgment obtained for the amount due thereunder. A judgment for alimony for specified monthly payments, subject by its own terms to modification or revocation by the court rendering the same, is not a final and conclusive judgment as to amount. The record of such a judgment is not available to show the amount definitely and conclusively due thereunder; as the court in the exercise of its power of revision might see fit, by reason of the changed condition and circumstances of the parties, to reduce the amount to be paid by the defendant in the decree. If a court in this State in a suit upon that judgment—the Tennessee judgment—were to render a judgment for the future monthly payments provided for in the Tennessee judgment, the chancellor in the Tennessee court might, after the rendition of the judgment in Georgia, revoke or modify the decree in the Tennessee court as to future payments to be made by the defendant thereunder. As long as the monthly allowances provided for in the judgment are to be paid within the discretion of the court rendering the judgment, there is no fixed and settled liability. To fix, in a ver-

dict and judgment in this State, such a liabiliity as the one exist-
ing in the Tennessee judgment, would be to adjudge the defendant
to be liable to pay $40 per month subject to the discretion of the
chancellor of the chancery court of Hamilton county, Tennessee.
For obvious reasons no such judgment should be rendered, and the
"full faith and credit" clause of the constitution does not so re-
quire. Lynde *v.* Lynde, 181 U. S. 183 (21 Sup. Ct. 555, 45 L. ed.
810); Israel *v.* Israel, 148 Fed. 576 (79 C. C. A. 32, and cases
cited, 9 L. R. A. (N. S.) 1168, and note). Nor do we think such
a judgment as the Tennessee judgment ought to be enforced in
the courts of this State upon the principles of comity. Especially
is this true in view of the ruling in the case of *Coffee* v. *Coffee,*
101 *Ga.* 787 (28 S. E. 977), that while the court has the right
to modify or revoke an order for temporary alimony, it has no
authority to revoke or in any way change a judgment for perma-
nent alimony. If upon the trial of this case a decree were rendered
providing for future monthly payments of alimony as provided
in the Tennessee decree, the chancellor of the chancery court of
Hamilton county, Tennessee, could revoke or modify the Tennes-
see judgment as to amount; whereas the courts of this State
could not revoke or modify the judgment awarding the amount
for which the husband was therein made liable, even if the court
in this State was advised that the chancellor of the Tennessee
court had altered the Tennessee judgment in a way that affected
the amount to be paid by the husband. There is no merit in the
complaints hereinbefore set forth.

3, 4. Complaint is made that the court erred in refusing to
direct a verdict for the defendant, finding in her favor in regard
to the custody of the children, as did the decree in the Tennessee
court. It is never error requiring a new trial for the court to
refuse to direct a verdict. See *Western & Atlantic R. Co.* v. *Calla-
way,* 111 *Ga.* 889 (36 S. E. 967); *Davis* v. *State,* 120 *Ga.* 488
(48 S. E. 152); *Central of Georgia Railway Co.* v. *Mote,* 131 *Ga.*
166 (62 S. E. 164). It is complained that the verdict is contrary
to evidence, because it does not find in favor of the wife in regard
to the custody of the children, as did the decree in Tennessee. The
disposition of the children upon the trial of a divorce case in this
State is not a matter for the jury, but is a matter for the court.
*Johnson* v. *Johnson,* 131 *Ga.* 606 (62 S. E. 1044). This rule of

our law is an additional reason why the court did not err in refusing to direct the jury to follow the Tennessee decree and award the custody of the children to the mother. The error which the court committed in this regard was in giving any instructions whatever to the jury with respect to their right to award the custody of the children to any one. In view of the rulings made, we deem it unnecessary to pass upon the other questions made in the record. *Judgment reversed. All the Justices concur.*