## FORD v. FORD.

1. The evidence authorized the verdict granting a total divorce to the libellant, and the amount of permanent alimony awarded.
2. The statement of the court in his charge to the jury, and while stating the contentions of the plaintiff, that "the libellant asks for an allowance out of her husband's estate for her support, when you have divorced the two according to the prayers of the petition," is not objectionable on the ground that it contains an expression of opinion by the court to the effect that a divorce in favor of the plaintiff would of course be granted.
3. The ground of the motion complaining of the court's failure to cover, in his charge to the jury, certain issues made by the defendant's answer is without merit. If the defendant desired more particular instructions, he should have made a written request for them.

November 17, 1916.

Divorce and alimony. Before Judge Thomas. Tift superior court. August 21, 1915.

*R. D. Smith* and *R. S. Foy,* for plaintiff in error.

*Middlebrooks & Pennington, T. H. Burruss Jr., J. S. Ridgdill,* and *John W. Crenshaw,* contra.

BECK, J. Mrs. Ida Ford brought a libel for divorce against her husband, Iverson L. Ford. There was also a prayer for permanent alimony. The jury upon the trial returned a verdict granting a total divorce and awarding permanent alimony in the sum of $7,500. The defendant made a motion for a new trial, which was overruled.

1. The plaintiff in error insists that the general grounds of his motion for a new trial should be sustained and that the verdict should be set aside because of a lack of evidence to support it. With this contention we can not agree. The libellant bases her suit and her right to a total divorce upon certain alleged acts of cruel treatment, and there was evidence submitted from which the jury were authorized to find that the allegations of cruel treatment were sustained. In case of cruel treatment by either husband or wife, the jury in their discretion may grant either a total or partial divorce. Civil Code, § 2946. Cruel treatment, within the meaning of this section is the willful infliction of pain, bodily or mental, upon the complaining party, such as reasonably justifies an apprehension of danger to life, limb, or health. *Stoner* v. *Stoner,* 134 *Ga.* 368 (67 S. E. 1030). In the case of *Ring* v. *Ring,* 118 *Ga.* 183 (44 S. E. 861, 62 L. R. A. 878), Candler, J., in a full discussion and clear analysis of the prior decisions of this court, defined the expression "cruel treatment," giving substantially the definition employed in the later case of *Stoner* v. *Stoner,* supra, and disapproving the ruling upon this subject in the case of *Myrick* v. *Myrick,* 67 *Ga.* 771. And when we hold in this case that the allegations of cruel treatment are supported by the evidence, we are applying the sound rule laid down in the case of *Ring* v. *Ring* and the earlier cases cited and quoted in support of the *Ring* case. In substance, the testimony of the plaintiff, who appeared as a witness on her own behalf, showed that before the happening of the occurrence which caused the final separation, the husband and wife had become estranged. He had plainly intimated, if he had not directly charged, in remarks made to the wife a few weeks before the final separation, that she was taking certain trips away from home to meet other men, and that her relations with other men had become improper. Mrs. Ford had then separated from her husband and begun to occupy a different room, but yielded to his entreaties and returned to him. But in November, 1913, a

scene of violence took place between the wife and husband, when a certain young man was making a visit to the home of the Fords for the purpose of calling upon their daughter. This young man afterwards married the daughter. Mr. Ford had conceived a violent antipathy for the young man; but Mrs. Ford insisted that he should be permitted to visit at their house, as he and the daughter were to be married, and she preferred their meeting at home to their meeting somewhere else. Mr. Ford said the young man was not a gentleman. Mrs. Ford insisted that he was. Mr. Ford insisted that she had nothing to do with it. She took a contrary view, and announced her view emphatically. Mr. Ford then called Mrs. Ford a "lie." He walked toward her, held his finger in her face, and put his teeth in her face (to employ her own language; though she evidently did not mean that he bit her, but merely thrust his face close into hers), and then called her a "stinking lie." Mrs. Ford then slapped him. He had called her a "lie" three or four times, and when he applied this term the third or fourth time she slapped him. He then struck her three times—struck her on both sides of the face and once in the mouth. He then attempted to follow up the blows, and would have continued to strike her, but the daughter seized him and told him not to hit her mother again. The blows, the wife testified, were painful and humiliating. She separated from him, and did not again cohabit with him, though she remained in a separate room in the house. This is the testimony of the wife. The jury had the right to accept it as true. As a matter of fact, it was corroborated in several particulars by witnesses introduced by the defendant.

We will not stop to inquire whether the two or three blows inflicted by the husband upon the face of the wife required a finding that the husband was guilty of such cruel treatment as the statute provides may give the right to a total divorce; or whether the jury might not have found that the striking of these blows, under the circumstances narrated, was the mere result of a temporary ebullience of temper, and that they were not sufficient to, and did not, jeopardize the life or limb or health of the wife or create a reasonable apprehension on her part that her body or health was in danger. But we are fully persuaded that the jury were authorized to find that, all the circumstances being considered, the conduct of the husband on the occasion to which we are referring amounted to

cruel treatment; that cruel and painful and humiliating blows were struck, and that they were of such a character as to create in the mind of a woman a reasonable apprehension that her health and body were in danger. That being true, they were authorized to find a verdict granting a total divorce.

2, 3. The rulings made in headnotes two and three require no elaboration.

*Judgment affirmed. All the Justices concur, except*
FISH, C. J. dissenting. I can not agree with the other members of the court in holding that the acts set out in the majority opinion constitute cruel treatment, under the definition of those words laid down in the cases of *Ring* v. *Ring,* 118 *Ga.* 183 (44 S. E. 861, 62 L. R. A. 878), *Brown* v. *Brown,* 129 *Ga.* 246 (58 S. E. 825), *Cureton* v. *Cureton,* 132 *Ga.* 745 (65 S. E. 65), *Stoner* v. *Stoner,* 134 *Ga.* 368 (67 S. E. 1030), and *Miller* v. *Miller,* 139 *Ga.* 282 (77 S. E. 21) ; the definition given in those cases being to the effect that "cruel treatment," as a ground for total divorce, "is the wilful infliction of pain, bodily or mental, upon the complaining party, such as reasonably justifies an apprehension of danger to life, limb, or health."