### WILKINSON *v.* WILKINSON.

1. Under the Civil Code of 1910, § 2945 (7), wilful and continued desertion by either of the parties for the term of three years will authorize the granting of a total divorce. The allegations of the petition as set out in the first division of the opinion, based on the ground of desertion, are sufficient to withstand a demurrer on the ground that the plaintiff should have alleged in addition that he was denied by the defendant his conjugal rights "with the intention of casting him off as a husband completely and forever."

2. Under the Civil Code of 1910, § 2946, where a libel for divorce is brought on the ground of cruel treatment, the jury in their discretion may grant either a total or partial divorce.

(a) Cruel treatment as a ground for total divorce in this State "is the wilful infliction of pain, bodily or mental, upon the complaining party, such as reasonably justifies an apprehension of danger to life, limb, or health."

(b) The allegations of the petition on the ground of cruel treatment set out a cause of action, and the court properly overruled the demurrer.

No. 4297. DECEMBER 12, 1924.

Divorce. Before Judge Meldrim. Chatham superior court. March 9, 1924.

*Alexander Akerman* and *Lewis A. Mills Jr.*, for plaintiff in error.
*Leo A. Morrissy*, contra.

HILL, J. 1. Charles G. Wilkinson filed a libel for divorce against Irene S. Wilkinson, alleging that she was a non-resident of the State, and basing his petition upon two grounds, desertion for over the term of three years, and cruel treatment. The allegations of the petition as to desertion were as follows: "That petitioner and the said defendant lived together as husband and wife until on or about the 15th day of September, 1918, when on said last named date, and more than three years before the filing of this petition, the said defendant without just cause wilfully deserted your petitioner and from the time of said desertion continuously persisted in the same and resided separate and apart from him; that the desertion aforesaid consists in the following acts of omission and commission: while petitioner and his said wife resided under the same roof, from said last-mentioned date, to wit, on or about September 15, 1918, they occupied separate bedrooms, and said defendant has persistently and continuously declined to accord to petitioner his conjugal rights; that during the period aforesaid, to wit, for more than three years prior to the filing of this petition, the said defendant has wilfully and persistently and without justification denied to petitioner his conjugal rights, so that while petitioner and the said defendant had resided up until about the 4th day of January, 1922, under the same roof, they have in fact and in truth been absolutely separated, owing to the desertion of petitioner by said defendant, as herein set out. That for the past twenty months, to wit, since the 4th day of January, 1922, petitioner and defendant have not resided under the same roof, defendant having removed to and being at the present time making her home in Jacksonville, Florida. That plaintiff has been without fault in the premises, has been ready and willing and able at all times to perform all his duties towards his said wife, and has given her no just cause for said desertion."

The Civil Code of 1910, § 2945 (7), provides that "Wilful and continued desertion by either of the parties for the term of three years" shall be sufficient to authorize the granting of a total divorce. It is insisted by the plaintiff in error that the allegations in the petition do not constitute desertion within the meaning of the code section above cited, as they do not contain any allegation to the

effect that the plaintiff in error deserted defendant in error "with the intention of casting him off as her husband completely and forever." Plaintiff in error cites in support of her contention *Whitfield* v. *Whitfield,* 89 *Ga.* 471 (15 S. E. 543). This court held in that case: "Within the meaning of the law of divorce (Code section 1712), it is desertion by the wife, though she continue to reside in the matrimonial domicile, for her wilfully, persistently, and without justification to deny her husband all his conjugal rights with the intention of casting him off as a husband completely and forever. The continuance of this state of affairs for three years affords cause of divorce on the ground of desertion, whether the husband remains in the matrimonial domicile occupying separate apartments from his wife, or withdraws from the house and lives elsewhere, provided her conduct be contrary to and against his will, and provided his own conduct be the result of hers and to that extent involuntary on his part. 1 Bishop, Mar. Div. & Sep. § 1670 et seq.; Lloyd's Law of Div. pp. 170, 173; Brown on Div. 142 et seq.; 4 Field's Briefs, §§ 218, 221; 5 Am. & Eng. Enc. of Law, 802, note 1, 803, and cases cited. The court erred in granting a nonsuit." *Pinnebad* v. *Pinnebad,* 134 *Ga.* 496 (68 S. E. 73). Under the allegations of the present petition, the defendant wilfully and continuously deserted the plaintiff for the term of three years, which, under the section of the code cited, is a good ground for divorce in this State. The code plainly declares that the wilful and continued desertion by either of the parties for the term of three years is sufficient to authorize the granting of a total divorce. The question is, under the allegations of the petition, has the desertion *continued wilfully* for the term of three years? If it has, and petitioner alleges and proves that fact, he is entitled to a total divorce; and that is what the petition in the instant case does allege.

We are of the opinion that where the petition alleges that the defendant has *persistently* and *continuously* declined to accord plaintiff his conjugal rights, and that for more than three years prior to the filing of the petition the defendant *wilfully* and *persistently* and *without justification* denied to petitioner his conjugal rights, etc., these allegations are sufficient to withstand a demurrer which attacks the petition on the ground that it is not alleged that the denial to plaintiff of his conjugal rights was "with

the intention of casting him off as a husband completely and forever." The authorities cited in the *Whitfield* case to support the above-quoted language do not go to the extent of using that identical language. Thus, in 1 Bishop, Mar. Div. & Sep. § 1670, cited in the *Whitfield* case, it is said, "As stated in a previous subtitle, the desertion of the matrimonial law, considered apart from what may justify it, consists of a cessation of the cohabitation, and combined with it the wrong-doer's intent to desert the other." And in the preceding subtitle (sections 1662-1663-1664) it is said: "In the nature of matrimony, and in harmony with the established principles of our jurisprudence, desertion as a matrimonial offence is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification either in the consent or the wrongful conduct of the other. It has the following elements. Its affirmative natural elements are two, the cohabitation ended, and the offending party's intent to desert. The statute creates a third element, the lapse of a defined period of time. Negatively, it must be without legal justification, and without a breach of the continuity which the statute renders essential. Statutes in special terms may create modification of these propositions, but ours do not generally. Statutes unlike in phraseology, and to the casual view dissimilar in meaning, are often when interpreted found to be identical in their results in law. We saw something of this in connection with the cruelty statutes. And it is so with various differently worded enactments making desertion a ground for divorce. For example, a clause providing divorce for desertion without justifiable cause does not differ from one giving this remedy simply for desertion; for when the latter is interpreted by the unwritten rule, it is seen not to apply to a blameless going away; that is one for justifiable cause. And a provision giving this remedy for wilful desertion is an equivalent for the same without the word 'wilful;' for by the unwritten rule that would not be desertion to which the will did not consent," etc.

Again, in Lloyd's Law of Divorce, 170, it is said: "There must be a wilful and deliberate intention, on the part of the party leaving the other, not only to leave, but to cease cohabitation permanently" (citing 43 Conn. 313; 58 How. Pr. 278; 27 N. J. Eq. 328); "and this intent must be followed by actual cessation of

cohabitation *for the statutory period"* (italics ours), (citing 23 Ala. 777; 13 N. J. Eq. 286; 30 N. J. Eq. 132). "In filing a petition for divorce on the ground of desertion, care should be taken to follow the language of the statute as far as may be, that the case may be shown to come clearly within the provisions thereof." Ibid. "The duration of the desertion must continue uninterruptedly for the statutory period." Ib. 172. "Refusal to renew cohabitation is desertion." Ibid. "Desertion can occur where the parties continue to dwell under the same roof." Ibid. "To cohabit is to dwell together. So that matrimonial cohabitation is the living together of a man and woman ostensibly as husband and wife." 1 Bishop, Mar. Div. & Sep. § 1669.

In 4 Field's Briefs, §§ 218, 221, also cited in the *Whitfield* case, it is said: "Desertion or abandonment is usually a ground for divorce, either total or partial, if continued for a period usually fixed by statute. It is an entire and absolute breaking-off of matrimonial cohabitation, and an intention by one party to desert the other, without the consent of the injured party, and for just cause" (citing Bailey *v.* Bailey, 21 Gratt. (Va.), 43; Morrison *v.* Morrison, 20 Cal. 431). "The mere refusal of sexual or matrimonial intercourse is not a legal desertion; but a refusal to cohabit, or a refusal to live together, although the offending party may live in the same neighborhood or even in the same house, would usually be legal desertion." Authorities cited. "If the personal security or respect of either party requires a separation, and a departure of the other, that might constitute a desertion of the party in fault, making such separation necessary on the part of the other. Thus, if the wife leaves her husband by reason of actual or threatened violence of her person, or even by his introduction to his home of a paramour, this would justify the wife in departing and refusing cohabitation; and it has been held that this would be a legal desertion on the part of the husband, at least in an action for necessaries furnished the wife under such circumstances: . . If the husband wilfully refuses the right of the wife to his companionship, the enjoyment and protection of his home, and especially if he abandons all matrimonial intercourse without her consent, and against her express desire, this is legal desertion for which she would be entitled to a decree of divorce, where this constitutes a ground for it." In Brown on Div. & Alimony, 142, it is said:

"Desertion in divorce law is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification, either in the consent or the wrongful conduct of the other. There must be an intent to desert, wilfully and maliciously persisted in, without cause, for the statutory period."

It will be observed from the quotations made from the authorities cited in the *Whitfield* case, which are supported by authorities from a number of outside jurisdictions, that they are practically uniform in holding that the allegations of the petition must conform to the requirements of the statute, where there is one. It will also be observed that there is nothing in these quotations to authorize the use of the identical language in the *Whitfield* case, viz., "to deny her husband all his conjugal rights with the intention to cast him off as a husband completely and forever." It will be further observed that in the *Whitfield* case the husband testified: "I was married to the libelee in 1869, lived with her up to 1876. We had four children. She never lived with me afterwards. She deserted and wilfully abandoned me ever thereafter, and has persistently done so against my will and oft-repeated remonstrances, and without any reason or cause, or fault of myself, so far as I know or have been informed. She continued to live in the same house in which we had previously lived, a home inherited by me from my grandfather, but would never recognize me as her husband. I entreated her, for the sake of ourselves as well as our children, to live with me as before, but she would not, saying more than once that she would have her throat cut from ear to ear before she would do so. I went away from home and left her there, and worked about for my living; went and lived awhile in Bibb County, and about one month ago I returned to my home where she was living, and occupied one of the rooms; but she did not then recognize me as her husband, but barred the doors against me. I neither ate nor slept nor had any social conversation with her. I did not eat with her at my table, but purchased my own provisions, cooked them, and ate at my own table. I went back there at the request of and to see my children. I had no other home to go to. The separation was wholly against my will, and without any fault on my part." The trial court in that case granted a nonsuit, and this court reversed that judgment. This case is here upon petition

and demurrer; and assuming all the allegations of the petition to be true as alleged, as we must upon demurrer, we are of the opinion that the court below did not err in overruling the demurrer to the allegations of desertion.

2. The allegations as to cruel treatment are as follows: "that continuously up until the time of their final separation, defendant abused, nagged at, and villified petitioner; that she persisted in this conduct towards petitioner, to such an extent that this caused petitioner's peace of mind and nervous system to become greatly impaired, all of which reacted upon petitioner's general health, to such an extent as to involve and impair his health, and caused him to fear and have reasonable apprehension of danger to his life, limb, and health. That this cruel treatment of himself by his said wife did actually impair and injure his health and physical well-being," etc. In answer to the general and special demurrers the plaintiff amended his petition by adding the following to paragraph 8 of the original petition, which alleged cruel treatment: "That the abuse and villification of petitioner consisted in continuously calling him names, referring to him as a 'beast,' and his conduct as 'beastly'; in continuously provoking quarrels with petitioner whenever he entered the home; making cutting and sarcastic remarks to him, and quarreling to such an extent that petitioner was forced to leave, in order to prevent further scenes; that in addition, in March of the year 1921, when petitioner and defendant were called to Baltimore because of the illness of their son, petitioner arrived in Baltimore ahead of defendant, and engaged a room for her; that on her arrival defendant immediately accused petitioner of having had a woman in said room, registered under the name of defendant, and that said woman was there for immoral purposes, all of which was untrue. Further, that since November, 1921, defendant has continuously had private detectives and spies to dog and follow petitioner, said detectives and spies working with and under the direction of one L. B. Cheatham, the husband of a niece of defendant; that petitioner discovered this fact early, but that same was persisted in, and was a constant cause of annoyance to petitioner, and caused him mental pain and suffering, all of which reacted on petitioner's health and well-being, and caused him to have reasonable apprehension of injury to his health and life." After the amendment to the petition the defendant renewed her

demurrer both general and special, one of the grounds of the special demurrer being that the eighth paragraph of the petition, as amended, should be stricken for the reason that the facts set forth therein are not of such a nature as to cause apprehension of danger to life, limb, or health, and are not sufficient to constitute cruel treatment, and not sufficient to constitute a ground for divorce.

Under § 2946 of the Civil Code of 1910, the jury in their discretion may grant either a total or partial divorce on the ground of cruel treatment. The kind of cruel treatment which is a ground for, and will authorize a total divorce in this State "is the wilful infliction of pain, bodily or mental, upon the complaining party, such as reasonably justifies an apprehension of danger to life, limb, or health." *Ring* v. *Ring,* 118 *Ga.* 183 (44 S. E. 861, 62 L. R. A. 878); *Brown* v. *Brown,* 129 *Ga.* 246 (58 S. E. 825); *Cureton* v. *Cureton,* 132 *Ga.* 745 (65 S. E. 65); *Stoner* v. *Stoner,* 134 *Ga.* 368 (67 S. E. 1030); *Miller* v. *Miller,* 139 *Ga.* 282 (77 S. E. 21); *Ford* v. *Ford,* 146 *Ga.* 164 (91 S. E. 42); *Pierce* v. *Pierce,* 145 *Ga.* 886 (89 S. E. 1045). Under the allegations of the petition as amended, we are of the opinion that the petition alleged such acts of cruel treatment as, under our law, will authorize a total divorce. The learned trial judge said: "From the days of Socrates and Xantippe, men and women have known what is meant by nagging, although philology can not define it or legal chemistry resolve it into its elements. Humor can not soften or wit divert it. Prayers avail nothing, and threats are idle. Soft words but increase its velocity, and harsh ones its violence. Darkness has for it no terrors, and the long hours of the night draw no drapery of the couch around it. The chamber where love and peace should dwell becomes an inferno, driving the poor man to the saloon, the rich one to the club, and both to the arms of the harlot. It takes the sparkle out of the wine of life, and turns at night into ashes, the fruits of the labor of the day." He might have added the words of Solomon that "It is better to dwell in the corner of the housetop, than with a brawling woman and in a wide house." Proverbs, 25 : 24.

It will be observed from reading the petition that it is alleged that continuously until the time of their final separation defendant abused, nagged at, and villified the plaintiff, that the defendant persisted in this conduct towards plaintiff to such an extent that this caused petitioner's peace of mind and nervous system to become

greatly impaired, all of which reacted upon petitioner's general health to such an extent as to involve and impair his health and cause him to fear and have reasonable apprehension of danger to his life, limb and health, and that this cruel treatment of him by his wife did actually impair and injure his health and physical well-being. It was also alleged that the abuse and villification of plaintiff consisted in continuously calling him names and in referring to him as a "beast" and his conduct as "beastly"; in continuously provoking quarrels with plaintiff whenever he entered the home, making cutting and sarcastic remarks to him and quarreling to such an extent that plaintiff was forced to leave; that on one occasion defendant did accuse plaintiff of having had a woman in his room registered under the name of the plaintiff, and that the woman was there for immoral purposes, all of which was untrue; that defendant had private detectives and spies to follow plaintiff; that these acts were a constant cause of annoyance to the plaintiff, and caused him mental pain and suffering, all of which reacted on petitioner's health, and caused him to have reasonable apprehension of injury to his health and life. These allegations of the petition must be taken on demurrer to be true; and so taking them, we are of the opinion that they form the basis for a total divorce on the ground of cruel treatment. In *Gholston* v. *Gholston, 31 Ga.* 625, 628, 633, this court held: "If a husband inflicts on the wife, by force or violence, bodily pain or suffering, and especially degrading pain or suffering, such as cowhiding or whipping, this would be cruel treatment; but this, and such as this, is not all that constitutes cruel treatment. The commission of acts which outrage the feelings of chastity and decency, such as threatening to commit or attempting to commit adultery, or cursing, abusing, or using insulting and opprobrious language, when done between husband and wife, whether by the husband to the wife or by the wife to the husband, in the knowledge, or coming to the knowledge, of both; these also, if persisted in and unatoned for, constitute cruel treatment."

In *Myrick* v. *Myrick, 67 Ga.* 771, 778, it was said by Lyon, J.: "Cruel treatment, or cruelty in the broad and unrestricted sense in which it is used in our statute, is any act intended to torment, vex, or afflict, or which actually afflicts or torments without necessity, or any act of inhumanity, wrong, oppression, or injustice;

for these or any of them, is the common understanding of the term; and upon this interpretation of the statute and the term, we hold that the acts specified in the libel as having been committed by the husband towards the wife constitute cruel treatment, considered collectively or singly." One of the grounds of cruel treatment in that case was that her husband had charged her with adultery, and had charged in the presence of her mother that the child, to which libellant had given birth, was not his child, but was the offspring of an adulterous intercourse with another man. In *Ray* v. *Ray,* 106 *Ga.* 263 (32 S. E. 91), it was said by Lewis, J.: "It seems from the record that the main ground relied upon by the wife to justify her separation from her husband was cruelty he had inflicted upon her by circulating reports among his neighbors to the effect that she was untrue to her marital vows and was guilty of illicit intercourse with another person. It is difficult to conceive of greater cruelty that could be inflicted upon the mind of a virtuous woman than a circulation of such reports. The mental anguish thus occasioned would doubtless be more keenly felt and would produce more mental pain than could result from personal injuries by physical blows. Unquestionably such cruelty would not only justify a separation, but would sustain an action for total divorce. *Myrick* v. *Myrick,* 67 *Ga.* 771; *Glass* v. *Wynn,* 76 *Ga.* 319." In *Miller* v. *Miller,* supra, this court held: "Where upon the trial of an action for divorce. there was evidence to the effect that the libellant, being a woman undergoing 'the change of life,' was during such time falsely and repeatedly charged by the defendant, in her presence, with incestuous adultery with her brother, and these charges produced such mental pain to the libellant as to cause her to become so ill as to make it necessary to keep her in bed, at times for as long as two weeks, and there was no evidence of condonation on her part, the jury were authorized to find a verdict for a total divorce in behalf of the libellant on the ground of cruel treatment." "The power of the courts to grant divorces on the ground of cruelty is not derived from the adjudications, or rules, of the ecclesiastical courts, but it rests upon the statutes of the States; and while those courts might grant divorce for one grade of cruelty, under our statute a divorce may be granted for every species of cruelty, according to the circumstances of the case." *Myrick* v. *Myrick,* 67 *Ga.* 778.

In some outside jurisdictions it has been held that conduct causing great mental suffering, making life unbearable, is sufficient to constitute a basis for divorce on the ground of cruel treatment. Lloyd's Law of Divorce, 162; Gibbs, 18 Kan. 419, 424; Cartwright, 18 Tex. 626; Briggs, 20 Mich. 34, 45; Close, 25 N. J. Eq. 526; Freeman, 31 Wis. 235, 249; Goodman, 26 Mich. 417. So also falsely accusing the wife of adultery has been declared legal cruelty. Pinkard, 14 Tex. 356 (65 Am. D. 129) ; Bray, 1 Hagg. Ecc. 163; Allen, 31 Mo. 479; *Collins, 29 Ga. 517*, 518; Kennedy, 73 N. Y. 369; Wheeler, 53 Iowa, 511 (5 N. W. 689, 36 Am. R. 240) ; Little, 63 N. C. 22. See also 9 Am. & Eng. Enc. Law (2d ed.), 783 (12), et seq.

*Judgment affirmed. All the Justices concur, except Atkinson and Gilbert, JJ., dissenting.*

HINES, J., concurs in the result.

GILBERT, J., dissenting. The petition for divorce undertakes to allege two grounds, desertion and cruel treatment. It is alleged that the three years desertion is made up, in part, by the wife living separately and apart from her husband, that is, not under the same roof, and the other part of the three years by her refusal to accord to the husband while living in the same house his "conjugal rights." The petition alleges that the desertion was wilful and continued for a period of three years. If there were no facts given to show that the desertion was not actual, such as is ordinarily understood by the term, the petition would be sufficient in this respect to withstand a general demurrer. In other words, when a petition alleges wilful and continued desertion for a period of three years, nothing more appearing, it is to be understood that the desertion means living separate and apart, not under the same roof; but the petition shows that desertion of that character was not continued for a period of three years, and that it was necessary to make up the three years by alleging facts which were deemed in law to amount also to desertion, so that when the two periods were added together they would amount to three years wilful and continued desertion. The question arises, therefore, because of the demurrer to the petition, whether an allegation that the wife "has persistently and continually declined to accord to petitioner his conjugal rights," without more, amounts in law to an allegation of such desertion as will afford ground for a divorce. The phrase

"conjugal rights" is quite vague and indefinite. A number of meanings have been attributed to that phrase, both in common parlance and by law-writers. In 12 C. J. at p. 503 the phrase is defined as follows: "Matrimonial rights; the right which husband and wife have to each other's society, comfort, and affection." In the footnote reference is made to the word "cohabitation." In 11 C. J. at p. 952, one definition of "cohabitation" is "a living together as husband and wife." Continuing the definition of the word it is also said: "The term is of large signification. Cohabitation may be lawful or it may be illicit. . . Although it has been held that the term implies sexual intercourse, it seems that, according to the weight of authority, sexual intercourse is not necessarily implied, as the word does not even include necessarily the occupying the same bed." In the footnotes many cases are cited dealing with the subject. In 21 Cyc. at p. 1148, on the subject of cohabitation, it is said: "The duty of living together carries with it the right of sexual intercourse; yet this latter right can not be unreasonably exacted, as where, for example, health would be endangered by rendering the wife liable to contracting disease." Coming to our own decisions, it has been held: "Within the meaning of the law of divorce (Code, § 1712) [Civil Code of 1910, § 2945], it is desertion by the wife, though she continue to reside in the matrimonial domicile, for her wilfully, persistently, and without justification to deny her husband all his conjugal rights with the intention of casting him off as a husband completely and forever." *Whitfield* v. *Whitfield,* 89 *Ga.* 471. In *Pinnebad* v. *Pinnebad,* 134 *Ga.* 496, it was held: "Mere proof that a wife declined to cohabit with her husband will not authorize the grant of a divorce to him on the ground of cruel treatment." In the latter case the *Whitfield* case was cited on the subject of desertion as a ground for divorce, although in the *Pinnebad* case the denial of conjugal rights was not pleaded as desertion, but as cruel treatment. Nevertheless the court, in the latter case, employed the same language with reference to the denial of conjugal rights, that is, the intention of casting off the husband completely and forever, as constituting desertion. It would seem repellant to every motive of reason and justice to hold that the mere refusal by the wife to accord to the husband his "conjugal rights," whatever that term may mean, without the further allegation that the refusal was with the intention to

permanently cast him off as a husband, would amount to an abandonment or desertion as contemplated in the code, as ground for divorce. The intention seems all-important. Temporary refusal may arise from many causes, especially from the physical condition of either party, though thoroughly innocent of any wrong motive. The point seems to have been clearly and correctly ruled in the *Whitfield* case in regard to desertion; and in the *Pinnebad* case it is flatly held that such a mere refusal, without more, will not even constitute cruel treatment, such as is contemplated as a ground for divorce. If the claim of abandonment, therefore, is based solely on the refusal of "conjugal rights" in order to make out the ground for divorce, under the authorities cited, it must be alleged that the refusal was with the intention of casting off the husband completely and forever. So long as such refusal with such intention continues, under our law, the desertion continues. Desertion continues no longer than both elements of the refusal are present. The moment the intention of permanency disappears an essential ingredient is absent. Therefore, under the allegations of this petition, which fails to allege that the refusal of conjugal rights was with the intention of permanently casting off the husband, and as that defect is pointed out by special demurrer, that ground of the petition should have been stricken. Much that is said in the majority opinion is in harmony with this dissent. The authorities cited, as a rule, stress the elements of intent and permanency. It is unnecessary to state the allegations undertaking to set out a ground based on cruel treatment, since they are hereinbefore stated clearly and fully. In my judgment the demurrer to the petition should have been sustained. Mr. Justice Atkinson concurs in the views herein expressed.