MORRIS *v.* MORRIS.

No. 15882.   JULY 10, 1947.

John H. Hudson and J. Walter LeCraw, for plaintiff in error.

Thomas L. Slappey and Wesley G. Bailey, contra.

CANDLER, Justice. (After stating the foregoing facts.) ■ The kind of cruel treatment which is a ground for divorce in this State "is the wilful infliction of pain, bodily or mental, upon the complaining party, such as reasonably justifies an apprehension of danger to life, limb, or health." Ring v. Ring, 118 Ga. 183 (44 S. E. 861, 62 L. R. A. 878); Brown v. Brown, 129 Ga. 246 (58 S. E. 825); Cureton v. Cureton, 132 Ga. 745 (65 S. E. 65); Stoner v. Stoner, 134 Ga. 368 (67 S. E. 1030); Miller v. Miller, 139 Ga. 282 (77 S. E. 21); Pierce v. Pierce, 145 Ga. 886 (89 S. E. 1045); Ford v. Ford, 146 Ga. 164 (91 S. E. 42); Wilkinson v. Wilkinson, 159 Ga. 332 (125 S. E. 856). An intention to wound, mentally or physically, is a necessary element of the cruel treatment for which divorce is allowed. Ring v. Ring, supra; Smith v. Smith, 119 Ga. 239 (46 S. E. 106); Dougherty v. Dougherty, 153 Ga. 487 (112 S. E. 454); Durham v. Durham, 156 Ga. 454, 458 (119 S. E. 702); Lowry v. Lowry, 170 Ga. 349 (153 S. E. 11, 70 A. L. R. 488). "Mental anguish, wounded feelings, constantly aggravated by repeated insults and neglect, are as bad as actual bruises of the person; and that which produces the one is not more cruel than that which causes the other." Glass v. Wynn, 76 Ga. 319. Cruel treatment, or cruelty in the broad and unrestricted sense in which it is used in our statute (Code, §§ 30-103, 30-104), is any act intended to torment, vex, or afflict, or which actually afflicts or torments without necessity, or any act of inhumanity, wrong or oppression, or injustice, considered collectively or singly. Myrick v. Myrick, 67 Ga. 771, 778. Under the allegations of the petition as amended, we are of the opinion that the petition alleged such acts of cruel treatment as, under our law, will authorize a divorce. In Wilkinson v. Wilkinson, supra, this court, quoting trial Judge Meldrim, said: "From the days of Socrates and Xantippe, men and women have known what is meant by nagging, although philology can not define it or legal chemistry resolve it into its elements. Humor can not soften or wit divert it. Prayers avail

nothing, and threats are idle. Soft words but increase its velocity, and harsh ones its violence. Darkness has for it no terrors, and the long hours of the night draw no drapery of the couch around it. The chamber where love and peace should dwell becomes an inferno, driving the poor man to the saloon, the rich one to the club, and both to the arms of the harlot. It takes the sparkle out of the wine of life, and turns at night into ashes, the fruits of the labor of the day." And to this he might well have added the words of Solomon, that "It is better to dwell in the corner of the house-top, than with a brawling woman and in a wide house." Proverbs, 25 : 24.

It is urged that the petition contains an affirmative allegation of fact that the defendant was possessed of an "uncontrollable temper" and therefore not responsible for her acts; and that the subsequent statement in the petition—that "the acts of cruel treatment inflicted upon petitioner by defendant were wilful, wanton, and deliberate on the part of defendant, and were for the purpose of causing petitioner pain and suffering, and did cause petitioner pain and suffering"—was a mere conclusion of the pleader. We are unable to agree with the defendant in her construction of the petition. Whether technically correct or not, the term, "an uncontrollable temper," is commonly used in referring to people of high temper. Since the writer of this opinion can first recall, he has frequently heard various people, known to him to be entirely rational, referred to as persons of ungovernable or uncontrollable temper. Considering the words "an uncontrollable temper" as they are employed in the instant case, in the light of their common and every day usage, and in connection with the other allegations contained in the petition, we think that it was clearly the intention of the pleader to charge that the defendant was a person who made no effort to curb or control her temper, and not a person mentally irresponsible. In some jurisdictions, as in Florida, the habitual indulgence of a violent and ungovernable temper by either spouse is, by statute, made a ground for divorce. 27 C. J. S., 594, § 52.

Another contention of the plaintiff in error is that the acts complained of had been condoned by the husband and for that reason do not constitute a ground for divorce. Condonation is forgiveness, either express or implied, by the husband of his wife, or

.by the wife of her husband, for some breach of marital duty, with an implied condition that the offense will not be repeated. *Phinizy v. Phinizy,* 154 *Ga.* 199 (3) (114 S. E. 185); *Lowry* v. *Lowry,* supra. It is alleged in the petition that during the first year the plaintiff and the defendant were married she began to curse and abuse him, and that this continued until the date of their separation, but from day to day and year to year grew worse until it reached the point of being unbearable to a person of the plaintiff's advanced years. For purposes of the demurrer this allegation is admitted to be true, and so treating it, as we must, the husband had no opportunity to condone the acts of cruelty alleged to have been inflicted upon him. There are certain things which when wilfully done amount to cruelty on account of the very fact that they are repeated from time to time. It is the constant repetition which makes them unbearable. As was said by Mr. Justice Grice in *Alford* v. *Alford,* 189 *Ga.* 630 (7 S. E. 2d, 278): "One or two petty fault-findings may be to a degree annoying, but it is the persistency of the fretting that causes the real vexation. It is the accumulation of the instances, the never-ending borings, the sum total of the repeated irritations; no one smarting, but the continued scraping of the surface already made raw and sore and inflamed by the previous annoying and provoking conduct. One briar prick, while not a pleasant sensation, may cause no serious pain, but a thousand of them may be harrassing." One or even several drops of water falling on the surface of a block of granite will make no perceptible change, but a constant dripping over a period of many years will mark its effect. At some time there is placed the straw that breaks the camel's back. There is nothing in the record to negative the idea that the unpleasant experience of the very last day this couple spent together may have been that straw. That last cursing may have been the one which convinced the plaintiff that others in the future, like those so often in the past, would be unbearable. In such a situation the husband's living with his wife did not amount to such condonation as canceled the prior elements of cruel treatment. We think that the facts alleged present a very clear picture of one whose patience at long last became exhausted. Supporting the view as to the effect of repetition of acts, while one standing alone might not suffice, com-

pare *Myrick* v. *Myrick, Glass* v. *Wynn,* and *Miller* v. *Miller,* supra; *Ross* v. *Ross,* 169 *Ga.* 524 (150 S. E. 822) ; *Duncan* v. *Duncan,* 183 *Ga.* 570 (189 S. E. 18).

From what we have said herein, it necessarily follows that the petition stated a cause of action for the relief sought, and it was not error to overrule the general demurrer.

*Judgment affirmed.    All the Justices concur.*