Myrick *vs.* Myrick.

## MYRICK *vs.* MYRICK.

[Some months since, in examining the old records of the supreme court, the attention of the reporter was called by Hon. R. F. Lyon to a decision which was rendered by him in 1861, while on the supreme bench. and which seems to have been omitted from the Georgia Reports by the reporter of that time. It contains principles of such importance, and has been so frequently called for by members of the bar, that it is deemed advisable to publish it in full. The recorded opinion is to be found in the clerk's office, in the book marked '' Opinions of Supreme Court of Georgia, from Savannah, January Term, 1861, to Athens, November Term, 1861, inclusive." Pages 159-180. The head-notes are made by the reporter.]

1. Drunkenness, as a ground of divorce, must be habitual.

2. Parties at law or in equity may amend their pleadings in form or substance at any stage of the proceedings, as a matter of right. Nor is this right taken away because a demurrer has been filed before the amendment is made. If it be still insisted upon, the amendment forms a part of the record, and must be considered by the court in passing upon the demurrer.

3. A libel for divorce on the ground of cruelty charged that the husband evinced repugnance toward his wife, absented himself from her much of the time without cause, neglected her while sick, refused to allow her to attend church, of which she was a member, or to supply her with the common necessities of wearing apparel, although possessed of an ample property, encouraged insubordination on the part of a servant towards her, sent away servants who had been given to her by her father, made a will leaving her only five dollars, drove her from the house, and upon her returning to her father, where she was delivered of a child, refused to contribute any thing to her support or that of the child, and charged her with adultery, saying that the child was not his, but that of another man :
*Held*, that such conduct would have furnished ample ground for the granting of a divorce by the English ecclesiastical courts. The word cruelty has no technical signification as contradistinguished from its broad, popular sense ; and many acts were held by those courts to be cruelty, but were not regarded as sufficient to authorize a divorce under their precedents, because not amounting to personal violence or creating a reasonable apprehension thereof.

4. In the grant of divorces, on the ground of cruel treatment, the courts of Georgia are not limited to such acts of cruelty only as were held to be sufficient for that purpose by the ecclesiastical courts of England. Cruel treatment, or cruelty, in the broad and unrestricted sense in which it is used in our statutes, is any act intended to torment, vex or afflict, or which actually afflicts or torments without necessity, or any act of inhumanity, wrong, oppression or injustice.

(*a.*) We are not to be understood as saying that every act of disagreement of husband and wife, or a mere austerity of temper, or want of civil attention or accommodation, rudeness of language, and even occasional sallies of passion, will be sufficient to authorize a divorce.   Still, marriage is a civil contract in which each is the equal of the other.   The wife is not the menial or slave of the husband, and if, by intentional unkindness, insult, reproach and indignities, he embitters her life and makes it impossible that the marriage state can be continued by the parties in happiness or satisfaction, a divorce should be granted.

(*b.*) Where cruelty has been practiced by one party towards the other, the jury should grant a divorce, either total or from bed and board, according to the circumstances of the case, as shall best advance the ends of law and promote and secure the happiness of the injured and innocent.

LYON, Judge.

Mrs. Frances Myrick filed a libel in Crawford superior court against her husband, Marcellus A. Myrick.   The libellant states in her petition, that she and her husband were married in the month of November, 1859, when she was only 17 years old, having been by her parents, up to that time, tenderly raised, cared for and educated.   She prays for a divorce *a vinculo matrimonii* upon the grounds of cruelty by her husband to her, and of drunkenness upon the part of her husband.   1. The only question made, as to the latter ground, is that the charge of habitual drunkenness as a specific and distinct ground of divorce under the statute, is not sufficiently stated.   So we think.   To authorize a divorce upon this ground, the party must be guilty of habitual drunkenness.   The charge is that he, the husband, frequently got drunk, and had several fits therefrom ; and although such excess may amount to habitual drunkenness, yet, as it is not in the language of the statute, we will not further consider that ground.

The specific acts of cruelty on which this quarrel is predicated, as detailed in the libel, are as follows :

(1.) That within less than six months from the marriage, after petitioner was removed by her husband from

Myrick *vs.* Myrick.

her parents to his house, her husband evinced great repug-
nance to her, treated her with great neglect and the
utmost indifference, absented himself from home withont
business, the greater part of his time, that he spent his
time in wandering about the county in dissipation and
idleness, leaving petitioner alone, neglected and without
attention or companions, save that of her negroes.

(2.) That during the time she was dangerously ill with
erysipelas, and confined to her bed, and greatly in need of
nursing and attention. While so confined, her husband
utterly neglected her, refused to nurse, attend to or remain
at home with her, but left her there in that condition, and
that finally, for the purpose of receiving that attention
her situation required, he carried her, at her request, to
her father's house ; and while there he continued the same
neglect and indifference to her that he pursued towards
her while at home—visiting her father's house only occa-
sionally, and then remaining a few minutes, refusing to re-
main and be with her, though urged thereto by her parents.

(3.) That when she recovered her health, she returned
to his house and her home, hoping, by her affection and
devotion to him, to win his love and protection, but instead
his neglect and indifference was continued in a more aggra-
vated form. He refused to let her attend church, of which
she was a member, saying that the minister was a damned
hypocrite.

(4.) He refused to furnish her with common neces-
saries of wearing apparel, although possessed of an ample
property.

(5.) He not only refused to punish one of his negroes,
who had been grossly insolent and insubordinate to her
in his absence, but approved of the conduct.

(6.) To wound her feelings and aggravate her condition,
he made his will, giving to her therein only the sum of five
dollars.

(7.) For the same purpose, he sent back to her father
a family of negroes, consisting of a man, woman and four

children, that her father had sent home with them as a gift, refusing to let them stay on his place.

(8.) In the month of June or July, 1859, her husband refused to let her stay in his house any longer, and actually drove her off without means of any kind, being then in a state of pregnancy by him, houseless and helpless, to wander away wherever she might find a home, and in this condition she went back to her parents, where she has since remained.

(9.) Since her return to her father, she has been delivered of a female child. During her confinement, and consequent illness, her husband paid her no attention, made no provision for her support and maintenance, or that of their common offspring, nor has he, since he drove her from his house, contributed anything whatever for the support, clothing and maintaining either her or their child, but the whole has devolved upon her father.

Simultaneously with the filing of this libel, Mrs. Myrick filed a bill in equity against her husband to have alimony and counsel fees for the prosecution of the libel, allowed by the court; in which was also an application for the writ of *ne exeat regno* against her husband.

To this bill the husband demurred, on the ground that the specifications of acts of cruelty in the libel did not separately or together constitute cruelty in law sufficient to authorize a total divorce. Before the demurrer was heard, libellant with the leave of the court amended her libel with additional specifications of cruelty, that is: That her husband had charged her with adultery, and had charged in the presence of her mother that the child to which libellant had given birth was not his child, but was the offspring of an adulterous intercourse of libellant and another man. To this amendment the defendant then objected, or rather insisted that the application for alimony and fees, and writ of *ne exeat regno* must depend entirely upon the sufficiency of the allegation in the libel, as it stood when the demurrer was filed, and could not be aided

Myrick *vs.* Myrick.

by this additional specification. The court below thought otherwise, and allowed the amendment to come in and be considered on the hearing of the demurrer, which was still insisted upon, in common with the averments in the libel.

The demurrer having been overruled by the court, the defendant then excepted, and the case came before us for review. On the hearing two points are made.

(1.) That the court, in considering the demurrer, erred in allowing the amendment made after demurrer taken, to be read or relied on to support the application.

(2.) That the court should have sustained the demurrer, and dismissed the bill.

2. Parties, by the act of 20th February, 1854, page 48, may at any stage of the proceedings at law or in equity amend their pleadings in matters of form or substance, as matter of right.

The amendment, under this broad, statutory right, was admissible, notwithstanding that the demurrer had been filed previously, and when the court came to pass upon the demurrer, it being still insisted upon, the amended matter stated in the pleadings was as much a part of the plaintiff's case as any part of the record, and had necessarily to be considered by the court in passing upon the demurrer. Hence there was no error in this.

3. The second point presents this question: Whether the specific acts of alleged cruelty contained in the libel, collectively or singly considered, constitute cruelty in a legal sense?

It is insisted by counsel for the plaintiff in error, in support of the objection to the sufficiency of the specifications, that to entitle a party to a divorce on the ground of cruelty, "there must be actual violence attended with danger to life, limb, or health, or there must be a reasonable apprehension of such violence." If in the grant of divorce on this ground, the courts of Georgia were limited to such acts of cruelty only as were held to be sufficient for that purpose by the ecclesiastical courts of England,

I am satisfied that the position would be well taken; for Dr. Lushington, one of the most learned and celebrated judges of that court, in Lockwood *vs.*Lockwood, 2 Curt. Ec. 281, considers that proposition to be the substance of the doctrine laid down by Lord Stowell in Evans *vs.* Evans, 4 Eng. Ec., 310, and that case is regarded as the leading and controlling one on this question.    In that case it is stated, "In the older cases of this sort which I have had an opportunity of looking into, I have observed that the danger of life, limb, or health is usually inserted as the ground on which the court has proceeded to a separation.    This doctrine has been repeatedly applied by the court in the cases cited.    The court has never been driven off this ground.    It has been always jealous of the inconvenience of departing from it, and I have seen no one case cited in which the court has granted a divorce without proof given of a reasonable apprehension of bodily hurt."

It is true that there are cases to be found reported from those courts greatly modifying, if not overruling, this principle; but they are to be regarded as exceptions rather than the rule; for notwithstanding such scattering precedents, the courts have generally returned to the principles of that case, as the law of that court on the subject.    But although we are inclined to assent to the soundness of this proposition as the rule by which the consistorial courts of England are controlled in the grant of divorces on the ground of cruelty, yet we cannot admit that the acts of cruelty enumerated in this libel will not bring the case within that rule.    On the contrary, we think that if we were governed by the precedents and rules of that court in this proceeding, that the libellant would upon the pleadings be entitled to the divorce, as we shall hereafter show.

In application for divorces in Georgia on the ground of cruelty, the courts are not limited to such acts of cruelty only, as those held by the ecclesiastical courts to be suffi-

cient for that purpose, for the power to grant divorces on this ground is derived from a statute of the state in the following words: " In case of cruel treatment on the part of one toward the other of the parties, or of habitual intoxication, the jury may, according to the circumstances of such case, determine whether the divorce shall be from the bonds of matrimony, or from bed and board ;" and as there is nothing in the words of the act from which we can infer an intention on the part of the legislature that the cruel treatment to be considered by the jury should be of that narrow and restricted nature only which the English courts have held necessary to constitute a ground of divorce, the words must be understood to have been used in their ordinary sense, that is, that the ordinary and popular signification of the term cruel treatment, or cruelty, was intended by the legislature. So we construe the meaning of the act. In so holding, we do no violence to the adjudications of the English ecclesiastical courts, for in those courts the term cruelty has no technical signification as contradistinguished from its broad popular sense, and many acts are therein defined and adjudged to be cruelty that are regarded as insufficient to authorize a divorce, because not amounting to personal violence, or a reasonable apprehension thereof. Thus in one case, " ill nature, violent passion, and frequent abuse of the wife from the time of the marriage," were proved against the husband. He had frightened her so as to occasion several fits of illness ; he had refused her medical assistance, in short, he had been a bad husband, but he had not beat her : the facts were held to constitute cruelty. Robinson *vs.* Robinson, 2 Phillim., 96. An attempt of the husband to debauch his own woman-servant, is an act of cruelty to the wife. 5 Eng. Ec , 232–242. Sanders *vs.* Sanders, 10 Jur., 143. Spitting in the wife's face is a gross act of cruelty. Cloburn's case, Hel. 5, 149 ; 1 Hag. Ec., 773 ; 1 Robertson 549–561 ; Bish. on Mar. and Div., §481 ; *Ibid*, 430. In Smith *vs.* Smith, 1 Eng. Ec., 232, Sir John

Nicoll said: " Cruelty, in my judgment, is proved. Here is violence, preceded by deliberate insult and injury. The sending away her carriage and horse, while she was at church, (they were her separate property), the forcible carrying her and confining her to her room, afterwards attempting forcibly to carry her back to her place of confinement, the forming an adulterous intercourse with her maid, the keeping that servant in the house notwithstanding the remonstrance of the wife and her friends, the deposing his wife from the management of his family, and vesting it in this prostitute, such circumstances have always been held by this court, not merely as acts of adultery, but as connected with cruelty. In addition to this, there is his conduct respecting the child, which he took from his wife and compelled to sleep in the room with him and the prostitute. Notwithstanding the pretext of parental rights, the exercise of which courts will not scan too nicely, yet here it was done, as has been shown, merely to distress his wife. This is marital tyranny, it is as clear an act of deliberate and unmanly cruelty as can be committed." See also Bish. on Mar. and Div., §482. While these and all similar acts and conduct have ever been held by the English courts as cruelty, and in a legal sense, yet they have rarely granted a divorce on such evidence, because restrained by the precedents and principles of the court. Here, as I have stated, the power of the courts to grant divorces on this ground is not derived from those adjudications, or rules, but it vests upon the statute of the state; and while those courts grant divorce for one grade of cruelty, we, under our statute, may grant a divorce for every species of cruelty, according to the circumstances of such case.

Cruel treatment, or cruelty in the broad and unrestricted sense in which it is used in our statute, is any act intended to torment, vex, or afflict, or which actually afflicts or torments without necessity; or any act of inhumanity, wrong, oppression, or injustice ; for these, or any of them,

is the common understanding of the term; and upon this interpretation of the statute and the term, we hold that the acts specified in the libel as having been committed by the husband towards the wife, constitute cruel treatment, considered collectively or singly.

The complainant is quite young—was scarcely a woman when she was taken by the defendant as a wife, and removed from the home of her parents, and before she is weaned from the memories and pleasures of childhood, the fond and devoted affection, the hovering, watchful, and devoted affection of her parents, she is left by her husband to brood in solitude over what she has left and lost. While he, utterly indifferent to her situation, her affection for him, her longing for his company, for which she has renounced and deserted all that was dear to her, spends his time away from her in idleness and dissipation. Not even a painful illness, in which she is confined to her bed, and when nursing and attention that she cannot give herself, and which was absolutely necessary for her safety and comfort, can recall him to her side; but his absence, neglect and indifference at a time when so keenly felt by her, is continued at his own house, and again at the house of her parents, where she has been removed to get that assistance which is denied to her at her own house by her husband. This indifference and neglect, as much as it distressed the wife, was not of itself sufficient to authorize a divorce, because as unmanly as such conduct was, it may be attributed, and probably is, to that thoughtlessness and want of care which (with regret be it said) so often marks the conduct of man to his dependent and most sensitive companion. And it is only mentioned here, that it may serve to characterize those positive acts specified in the libel which are relied on as evidence of cruelty.

Upon the recovery of the wife from this illness, and return home, he not only continued to leave her alone at home, but he refused to let her attend the church of which

she was a member. Possessed of an ample estate, he refused to furnish her with the common necessities of wearing apparel. He not only refused to punish one of his negro men for insubordination and gross insolence to her in his absence, but approved openly of his conduct. He made a will, disposing therein of his estate to his relatives, and giving to her only the sum of five dollars. He sent back to her father a family of slaves that he had sent home with them as a gift, refusing to let them stay on his place. He refuses to let her stay any longer in his house, but drives her out in a state of pregnancy to wander where she might, and afterwards when she gave birth to a female child, the common offspring of their intercourse; and in her consequent confinement and since, he has neglected and refused to pay her any attention, to provide in any way for their support and maintenance, but left them entirely dependent for all things upon her parents. He charged her with adultery, and said in the presence of her mother, that the child of which she had been delivered was not his, but that of another man.

The right of the husband to control his household, that is in their attendance upon church, to receive or refuse property given to him by his wife's parents, or to send it away, if he chooses, to make such disposition of his property by will as he thinks proper, and to judge of the propriety of the punishment or conduct of his servants, this court cannot question, nor will we interfere therewith; but where these and all other similar acts are done by the husband capriciously, for the purpose, and with a view to wound, vex, distress, and torture his wife, they are cruel, inhuman, and brutal. What did this defendant care about his wife's attending church, except to deny her a pleasure and comfort, to tyrannize over and make her wretched? Why limit her to a pair of shoes and two calico dresses per year, with his ample estate, except to show his indifference and malignity to her? Why refuse to punish a negro for insubordination and insolence to his wife, ex-

cept to show her that she stood below the negro in his confidence and esteem ?   Why should he, at his age, with his health and habits, make a will cutting her off with five dollars, except to prove his hatred to her, and to wound and torture her feelings as a wife and woman ?   Why, after having driven her from the shelter of his roof, charge her with infidelity?   Why tell her mother that her child was not his, but that of another, except to degrade her, to destroy the affection of her parents, to deprive her of this last resting place for love, respect and protection ?

He takes her from the parental roof, a happy, innocent and loving woman, and after subjecting her to a life of suffering and distress, wounding and torturing her in every way that a malicious ingenuity can suggest, flings her from him in destitution as a thing of scorn and infamy, to be shunned and avoided by all that is good and virtuous ; and when she files her application for relief, reciting his wrongs and injuries to her, without denying, says that the acts charged do not amount to cruelty—such cruelty as would entitle her to be relieved from the marriage.   Could there be greater cruelty?   Blows would have been positive kindness to such acts of wrong and injustice.

The charge of infidelity, under the aggravated circumstances as made in this case, in connection with the other acts of cruelty charged, was sufficient even in the ecclesiastical courts to authorize a divorce.   Durant *vs.* Durant, 1 Hag. Ec., 768; Gale *vs.* Gale, 1 Robertson, 421.   The wife's person in such a case is not considered safe from the husband when influenced by the passion of jealousy.

The turning the wife out of doors, and driving her away, a houseless and penniless wanderer, in a state of pregnancy, is such an act of gross cruelty as would authorize a divorce in any court where cruelty is a ground.   It is not only the greatest wrong, indignity and oppression that a brutal husband could inflict on his wife in her condition, it exposed her to bodily as well as mental suffering.   Therefore had this court have held that the power of the courts

in this state to grant divorces on this ground depended upon the principles and precedents laid down by the consistorial courts, to be brought within the definition of cruelty, as deduced from a consideration thereof by Mr. Bishop, in his learned and philosophical treatise on the subject of Marriage and Divorce, §454, that is, that " cruelty is such conduct in one of the married parties as renders further cohabitation dangerous to the physical safety of the other, or creates in the other such reasonable apprehension of bodily harm as materially to interfere with the discharge of marital duty," our judgment must have been the same ; for, as I have shown, the conduct of the husband has not only rendered cohabitation dangerous, and created in the wife such a reasonable apprehension of bodily harm as materially to interfere with the discharge of marital duty, but his conduct has rendered cohabitation impossible. But we do not hold it to be necessary that, to entitle a party to a divorce, the case must be brought within these precedents or that rule. It is sufficient if it come within the plain letter of our statute, giving to the words their common signification as understood by our people, and the persons who are to try the case. Thus, if the husband, by neglect and indifference, or by studied acts of insult and wrong practiced upon the wife, that have an open and manifest tendency to degrade the wife in her social position, to render her life miserable and unhappy, to make her life intolerable, and her intercourse with her husband a source of pain and suffering rather than of pleasure and happiness, although no personal violence is done or threatened, in all such cases a divorce should be granted.

In holding this to be the sense of our statute, we do not wish to be understood as saying that every act of disagreement of husband and wife, or a mere austerity of temper, petulance of manner, or want of civil attention and accommodation, rudeness of language, and even occasional sallies of passion, shall be sufficient to authorize a divorce.

Marriage is a civil contract of the highest and most sol-

emn character, and one in the strict preservation and main-
tenance of which society and the whole community is more
interested than any other, and while it is the duty of each
by mutual forbearance, concession and kindness to over-
come and remove their natural infirmities and asperities,
to lighten life's heavy burden and rough journey as much
as possible, each bearing in mind that human nature is
far from being perfect in the best of mankind, still it is
at last but a contract, a union for life, in which each is the
equal of the other.   The wife is not the menial or slave
of the husband, and if by intentional unkindness, insult,
reproach and indignities, the husband embitters the life of
his wife and makes it impossible that the marriage state
can be continued between the parties in happiness or sat-
isfaction, the contract should in all such cases be dissolved
by the court.   The law does not require of the wife a life
of degradation, misery and suffering, that the marriage
state should be continued.   Whenever the jury, guided by
these rules, shall be satisfied that one of the parties to the
marriage has practiced cruel treatment towards the other,
they must grant a divorce, either total, or from bed and
board, according to the circumstances of the case, as shall
best advance the ends of the law, and promote and secure
the happiness of the injured and innocent.

In this state the question was no longer an open one at
the time of this case, for it had been fully settled in *Ghols-
ton vs. Gholston*, 31 *Ga.*, 634.

Judge Thomas, the presiding judge on the trial of that
case, having charged the jury, "if the husband inflicts on
the wife bodily pain or suffering, such as cowhiding or
whipping, this would be cruel treatment.   But this, and
such as this, is not all that constitutes cruel treatment.
The commission of acts which outrage the feelings of mod-
esty and decency, such as threatening to commit or at-
tempting to commit adultery, or cursing, abusing, or using
insulting or opprobrious language, when done between
husband and wife, whether by the husband to the wife or

by the wife to the husband, and in the knowledge or coming to the knowledge of both, these also, if persisted in and unattoned for, constitute cruel treatment." This court, in passing upon that case, held that the court gave the law in charge to the jury, and this, we think, was a full and complete adjudication of the question, behind which we would not have gone, and have only gone into the argument here for the satisfaction of counsel, and with the hope that here the discussion will end.