ALFORD *v.* ALFORD.

No. 13135. FEBRUARY 14, 1940.

*R. O. Jones* and *W. Y. Atkinson,* for plaintiff in error.
*Walter D. Sanders,* contra.

GRICE, Justice. Thelma Alford, the husband, brought suit for divorce against his wife, Cecil Alford. (We are assured by counsel at the bar that there is no mistake in the names, as they thus appear in the record.) The suit was based on allegations of cruel treatment; the wife denying the acts alleged against her and opposing his prayer that he be granted a divorce. She on the other hand set forth cruelty on his part towards her, and asked that she be granted a divorce. She prayed also for permanent alimony and attorney's fees. The jury found a divorce for both parties, and that "alimony and attorney's fees are denied." The wife moved for a new trial, which being denied, she excepted.

The wife did not challenge by demurrer the sufficiency of the allegations in the husband's petition for divorce, but takes the position that the evidence is not sufficient to show cruel treatment, within the meaning of the law, and it is also stated in the brief that conduct of the wife was by the husband condoned. The husband swore that he separated from his wife on March 20, 1938; that during the time he lived with her she accosted him on the public square, and in the presence of others falsely accused him of having improper relations with other women; that her conduct was cruel, quarrelsome, and nagging; that she would go into a

rage, and "break dishes;" that she cursed him "for everything she could think of;" that "this treatment that she gave me made me nervous. I couldn't sleep and rest at night, on account of a nervous breakdown because of this treatment. I believed if I continued to live with her, her treatment would impair my health." The last unpleasant scene was the very night they separated, she moving out of the home. He testified in effect that his conduct toward her was blameless. While the testimony was in sharp conflict, the jury had a right to believe his version as to the why and wherefore of the disruption of the home, and to base thereon a finding in his favor, unless the proof further showed that there had been a voluntary condonation subsequently to the acts complained of. "Nagging" may be cruel treatment within the meaning of our Code. *Wilkinson* v. *Wilkinson,* 159 *Ga.* 332 (125 S. E. 856). See also *Ross* v. *Ross,* 169 *Ga.* 524 (150 S. E. 822) ; *Duncan* v. *Duncan,* 183 *Ga.* 570 (189 S. E. 18).

■ Counsel for the wife insists, however, that all this was condoned, because it all happened before March 20, 1938, which was the day the wife left him, and that he had continued to live with her throughout all this alleged nagging, and had even thereafter, as he alleges in his petition, pleaded with his wife to return, and that she refused to do so.

There are certain matters which when wilfully done amount to cruelty on account of the very fact that they are repeated from time to time. It is this constant repetition that makes them unbearable. Beginning with *Head* v. *Head,* 2 *Ga.* 191, this court has consistently held that occasional sallies of passion, if they do not threaten bodily harm, do not amount to cruelty against which the law can relieve. But the very word "nagging" carries with it the idea of continuity. See the New Merriam-Webster Dictionary. One or two petty fault findings may be to a degree annoying, but it is the persistency of the fretting that causes the real vexation. It is the accumulation of the instances, the never-ending borings, the sum total of the repeated irritations; no one smarting, but the continued scraping of the surface already made raw and sore and inflamed by the previous annoying and provoking conduct. One briar prick, while not a pleasant sensation, may cause no serious pain, but a thousand of them may be harassing. At some time there is placed the straw that breaks the camel's back. There is

nothing in the record to negative the idea that the unpleasant experience of the very last evening this couple spent together may have been that straw—that last annoyance that, together with what took place before, constituted nagging. In such a situation the husband's living with his wife did not amount to such condonation as canceled the prior elements of the nagging. As supporting the view as to the effect of repetition of acts, while one standing alone might not suffice, compare *Myrick* v. *Myrick,* 67 *Ga.* 771; *Glass* v. *Wynn,* 76 *Ga.* 319; *Miller* v. *Miller,* 139 *Ga.* 282 (77 S. E. 21); *Ross* v. *Ross,* supra; *Duncan* v. *Duncan,* supra. It was held in *Johns* v. *Johns,* 29 *Ga.* 718, that the fact that the husband had a friendly interview with his wife, and requested her to return home and live with him, does not in law amount to a condonation, although it was said in that case that it was proper and overwhelming testimony to be urged in argument to the jury to show that the husband did not apprehend any danger from living with his wife, and thus to rebut the charge of cruelty at her hands.

■ Each party asked for a divorce; both were granted divorce. We have not before us the question whether the evidence was sufficient to grant the wife a divorce, for no issue as to that is raised. The evidence, while it did not demand a finding in his favor, was sufficient to justify the jury in granting to the husband the relief sought; i. e., that her conduct was such as to justify him in obtaining a divorce from her. It was for the jury to determine whether or not the wife was entitled to alimony. She was not entitled to it as a matter of course. *Davis* v. *Davis,* 134 *Ga.* 804 (68 S. E. 594, 30 L. R. A. (N. S.) 73, 20 Ann. Cas. 20).

■ Ground 1 of the amended motion complains that the trial court in defining cruel treatment failed to include the element of wilfulness. The charge as to this was almost identical with that given by the trial court as reported in *Lowry* v. *Lowry,* 170 *Ga.* 349, 350 (153 S. E. 11, 70 A. L. R. 488). This court in the case just cited held that since the wilfulness of the cruel treatment is an essential element of the cruel treatment which will authorize the grant of a divorce upon this ground, the failure of the judge to embrace this element in an instruction upon this subject requires the grant of a new trial, unless as a matter of law we hold that the cruel treatment was wilful. In that case it was ruled that it could not be so held. The particular specification of cruel

634

treatment in the case at bar with which we are dealing was the alleged nagging of the husband by the wife. We can not say that as a matter of law this court should hold that it was such conduct as was necessarily wilful.

This same ground also contains the criticism of the language of the court wherein it charged that "if plaintiff or defendant, either or both, has shown such cruel treatment as that, then it would be discretionary with the jury as to whether it would grant either or both of them a divorce, cruel treatment being one of the discretionary grounds under the law." It is insisted that here the jury were instructed that they would have the right in their discretion to return a verdict finding a divorce against both parties although only one of them might have been guilty of inflicting cruel treatment on the other party. We hardly think the jury would have so understood the instructions given them.

 The rulings made in headnotes 5, 6, 7, and 8 need not be discussed.

██ Ground 6 complains that the judge erred in not giving to the jury the law governing the granting of permanent alimony contained in the Code, §§ 30-209 and 30-210, the provisions of which were stated in this ground of the motion. The charge of the court was not specified as a part of the record, but in connection with this ground the motion contains the following recital which the judge certified to be true: "Movant sued for permanent alimony, but nowhere in the charge of the court was the jury instructed as to what permanent alimony is, or under what circumstances they would in their discretion be authorized to grant same. The only thing in the charge of the court relative to the nature of alimony was the charge that 'alimony, gentlemen, is a provision made out of the estate or income of the husband to provide a support for the wife.' No attempt was made in the charge to distinguish between temporary and permanent alimony, and nowhere in the entire charge were the words 'permanent alimony' used." The wife prayed for alimony. She was awarded none. We think the court should have at least charged the jury the substance of Code § 30-209, that "The jury rendering the final verdict in a divorce suit may provide permanent alimony for the wife, either from the corpus of the estate or otherwise, according to the condition of the husband."

On account of the errors pointed out in grounds 1 and 6 of the amended motion, heretofore specifically dealt with, we must reverse the judgment refusing a new trial.

*Judgment reversed. All the Justices concur.*