# GARDNER *v.* GARDNER.

No. 17018.   MARCH 15, 1950.

670

*John E. Feagin,* for plaintiff.
*Campbell & Vaughn,* for defendant.

ALMAND, Justice.  The jury by its verdict required the defendant to pay the plaintiff $25 per month as rent for her equity in the house and lot in which the defendant lived, and further required him to pay the taxes and insurance, and "upkeep of house so long as they own same jointly.  The house can be sold at public outcry only in front of Newton County courthouse, and in the event of such a sale Mrs. Gardner is to receive one-half

of said sale price. We specifically find against any alimony for plaintiff."

It appears without dispute from the evidence that the parties owned this property as tenants in common. The plaintiff prayed that the defendant's interest therein be awarded to her as permanent alimony, and the defendant prayed that the value of the plaintiff's interest be fixed by the jury. These were all the pleadings as to this property. There were neither pleadings nor evidence that authorized the jury to return the verdict which they did in regard to the house and lot. Nor could the pleadings have been amended so as to authorize the jury to fix and declare the terms on which the property could be used and sold, separate and apart from the question of alimony. The award in this case was definitely stated by the jury not to be alimony. The portion of the verdict complained of was illegal, and should have been stricken by the court. *Chicago Building &c. Manufacturing Co.* v. *Butler,* 139 *Ga.* 816 (1) (78 S. E. 244); *Davis* v. *Davis,* 206 *Ga.* 559 (57 S. E. 2d, 673).

■ "Where both parties to a divorce suit introduce evidence in support of their respective prayers for divorce, and the jury returns a verdict in the form prescribed by the Code, § 30-116, without stating whether the verdict is for the plaintiff or the defendant, the verdict will be construed to be for the plaintiff." *Taylor* v. *Taylor,* 195 *Ga.* 711 (1) (25 S. E. 2d, 506). Under this ruling, the verdict in the present case must be construed as finding that the divorce was granted on the wife's petition.

This court has ruled that, where a wife sues for a total divorce and prays for permanent alimony, and the evidence shows that she has no separate estate or means of support, and that her husband is able to support her, a verdict which grants a divorce and denies permanent alimony is contrary to law so far as alimony is concerned. *Campbell* v. *Campbell,* 90 *Ga.* 687 (16 S. E. 960); *Wilkes* v. *Wilkes,* 157 *Ga.* 841 (122 S. E. 548). It has also been held that, where both parties sue for a divorce and a divorce is granted to both parties, and the evidence is sufficient to justify the jury in finding that the wife's conduct was such as to justify the husband in obtaining a divorce from her, in such circumstances the wife was not entitled to an award of alimony as a matter of course, but it was for the jury to determine wheth-

er she was or was not entitled to alimony. *Alford* v. *Alford,* 189 *Ga.* 630 (3) (7 S. E. 2d, 278). In *Simmons* v. *Simmons,* 194 *Ga.* 649 (22 S. E. 2d, 399), it was held that, even though the wife obtained two verdicts for divorce on the ground of cruel treatment, and such verdicts amounted to a finding that she was not ·at fault, yet the verdict finding against her prayer for permanent alimony was not contrary to the evidence and without evidence to support it, where there was evidence as to the wife's separate means and the husband's ability to pay; and this and the fact that an allowance was made to ˙the wife for the support of three minor children awarded to her were sufficient to justify the jury in denying alimony for her separate support. It was there said: "It is not the law, however, that in every case in which the wife is granted a total divorce permanent alimony must also be awarded to her. Various other facts and circumstances may require consideration." P. 654. See also, in this connection, *Singleton* v. *Singleton,* 202 *Ga.* 269 (42 S. E. 2d, 737).

The evidence in this case shows that from the year 1936 to the separation in 1948 the plaintiff had suffered from a mental and nervous disorder, which required frequent medical care and confinement in hospitals for mental patients. At one time she was committed to the State Hospital at Milledgeville for nine months, and upon her sanity being restored, she was released. It was during this period that her husband claimed that his wife had been cruel to him, which cruelty consisted, he testified, in her nagging about his refusal to let her drive the automobile, and his refusal to allow her more than $2 a week; also that she was constantly on the go and kept him on a strain and wondering where she was. There was testimony by relatives of the defendant that, more than 11 years prior to the separation, the wife had on two occasions gone out with men to social parties while she was visiting ˙these relatives. The wife testified that these persons were close friends of hers. There is no evidence in the record to justify even an inference that the wife by so doing had been guilty of any gross misconduct which would have authorized the jury to find that the separation was caused by her fault.

There was evidence that at the time of the trial the wife's mental and nervous condition had improved, that she was em-

ployed on a commission and had a drawing account of $30 per week, which amount was charged against her commissions; and that since she began to work her commissions had not exceeded her drawing account, though the husband testified that she has a mental illness which is of a recurring nature and likely to recur. In her motion to modify the judgment, she alleged that since the trial she had lost her position and was then unemployed. The only other property that the plaintiff owned was a one-half undivided interest in the house in which the defendant lived. It appears that the wife is the beneficiary of a trust estate created by her mother, consisting of 40 shares of stock in Bibb Manufacturing Company and about $200 in cash, which fund could only be used to pay hospital treatment in the event of her illness. There is evidence in the record that her living expenses amount to about $140 per month. As to the husband's financial ability, it appears that he is a cotton-mill superintendent, and his net earnings from this position are $500 per month, and that he is living in the house owned by the parties, against which there is a balance of $1150, which he is reducing at the rate of $17.50 per month. The husband testified that he contributes $40 per month to the support of his son, who is in a boarding school, and that he will have additional expense when his daughter goes to school "in the fall of 1949."

We think that the evidence in this case brings it within the rulings in the *Campbell* and *Wilkes* cases, supra, and that the plaintiff's motion to set aside the portions of the verdict and judgment complained of set forth good and sufficient grounds. Code, § 30-101, as amended by the act of 1946 (Ga. L. 1946, p. 90); Code (Ann. Supp.), § 30-101. It was therefore error to overrule such motion. We deem it unnecessary to pass upon the other grounds of the motion to set aside the verdict and judgment.

*Judgment reversed. All the Justices concur. Duckworth, C. J., concurs in headnote 1 and the corresponding division of the opinion and in the judgment of reversal, but dissents from the ruling in headnote 2 and the corresponding division of the opinion.*